**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL DEVELOPMENT COMPANY, LLC,<br><br>Defendant. | Civil Action No. 22-cv-00518<br><br>Hon. Matthew W. Brann<br>Chief United States District Judge |

**BRIEF IN SUPPORT OF DEFENDANT INTERNATIONAL DEVELOPMENT COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT**

**HOUSTON HARBAUGH, P.C.**
Robert J. Burnett, Esquire
PA76734
Brendan A. O'Donnell, Esquire
PA309007
401 Liberty Avenue, 22nd Floor
Three Gateway Center
Pittsburgh, PA 15222
Phone: (412) 281-5060
Fax: (412) 281-4499
*Counsel for Defendant International Development Company, LLC*

# TABLE OF CONTENTS

**INTRODUCTION** .......... 1

**FACTUAL BACKGROUND** .......... 2

**PERTINENT PROCEDURAL POSTURE** .......... 3

**QUESTION PRESENTED** .......... 4

**LEGAL STANDARD** .......... 4

**ARGUMENT** .......... 5

I. Article VII-a Forecloses the PHT's Ability to Prevail on Its Claims .......... 5

II. Article VII-a Represents a Legislative Determination That Must Be Applied to Determine the Effect of the June 1908 Tax Sale. .......... 11

**CONCLUSION** .......... 15

# TABLE AUTHORITIES

**Cases**

*Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405 (3d Cir. 1992) ....................11

*Bankamerica Corp. v. U.S.*, 462 U.S. 122 (1983) ....................14

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006)....................4

*Commonwealth v. Edwards*, 256 A3d 1130 (Pa. 2021)....................12

*Commonwealth, Pennsylvania Game Commission v. Ulrich*, 565 A.2d 859 (Pa. Commw. Ct. 1989) ....................5

*Cox's, Inc. v. Snodgrass*, 92 A.2d 540 (Pa. 1952)....................5

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982)....................14

*In re VistaCare Group, LLC*, 678 F.3d 218 (3d Cir. 2012).................... 12, 13

*In re Visteon Corp.*, 612 F.3d 210 (3d Cir. 2010) ....................14

*Mack v. Yost*, 63 F.4th 211 (3d Cir. 2023)....................12

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941)....................11

*Moore v. Commonwealth, Dept, of Environmental Resources*, 566 A.2d 905 (Pa. Commw. Ct. 1989) ....................5, 10

*Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Tr.*, 335 A.3d 1108 (Pa. 2025).................... 11, 13

*Poffenberger v. Goldstein*, 776 A.2d 1037 (Pa. Commw. Ct. 2001)....................5, 10

*Ross v. Blake*, 578 U.S. 632 (2016) ....................12

*Williams v. Borough of West Chester, Pa.*, 891 F.2d 458 (3d Cir. 1989) ....................4

**Statutes**

72 P.S. § 5860.701-A....................6

72 P.S. § 5860.702-A.................... passim

72 P.S. § 5860.703-A ......................................................................................9, 14

72 P.S. § 5860.706-A ................................................................................ 9, 10, 11

## INTRODUCTION

International Development Company, LLC ("IDC") respectfully requests this Court to enter judgment on all counts in the Complaint in its favor and against Charles Rice Kendall and Ann P. Hochberg, as Trustees for The Thomas E. Proctor Heirs Trust (the "PHT") because the PHT cannot establish title to the property in question here, there is no justiciable ownership dispute, and the claims are over a century late. Pennsylvania's newly enacted Article VII-a of the Real Estate Tax Sale Law ("Article VII-a") (effective July 12, 2026) provides that for unseated land sold for unpaid taxes before that date, fee simple title—including any severed subsurface estate—vests in purchaser when the conveyance included but was not expressly limited to the surface estate, and where the subsurface estate was not separately assessed for the year of the tax sale, subject only to a redemption of record or a court order in an action challenging the legal effect of a tax sale that was commenced within the five year period from the tax sale. The June 1908 sales here meet each condition; there was no separate subsurface assessment, no redemption, and no timely challenge. The PHT's predecessors' subsurface interests were extinguished. Article VII-a also confirms a five-year limitations period that renders this action over a century too late.

## FACTUAL BACKGROUND

In 1893, the Schrader Mining and Manufacturing Company conveyed 45 contiguous tracts of land in Bradford County, Pennsylvania to Thomas E. Proctor ("Proctor") and Jonathan A. Hill ("Hill"). [Statement of Facts ("SOF") ¶ 1]. Of the 45 tracts conveyed, title to the minerals, coal, oil, gas and petroleum (the "Subsurface Estate") in eight tracts, the "Premises", is in dispute here. [Complaint, ECF 1 at ¶ 1]. The Premises is identified by the warrantee names of John Adlum, John Barron Jr., John Barron Sr., Clement Biddle, Mark J. Biddle, Benjamin Pennington, Collinson Reed, and James Shoemaker. [SOF ¶ 2].

In 1894, Proctor and Hill conveyed the Premises to Union Tanning Company, excepting the Subsurface Estate (*i.e.*, minerals, coal, oil, gas, or petroleum) from the conveyance (the "Proctor-Hill Reservation"). [SOF ¶¶ 3, 4]. In 1903, the Union Tanning Company conveyed the Premises to the Central Pennsylvania Lumber Company ("CPLC"). [SOF ¶ 5]. The Premises was assessed as unseated and became subject to a tax sale for the nonpayment of taxes in 1908 (the "June 1908 Tax Sale"). [SOF ¶ 6]. From the 1894 Proctor-Hill Reservation through the June 1908 Tax Sale, the Subsurface Estate of the Premises was not assessed to Proctor, to Hill, or to anyone else. [SOF ¶¶ 9-10]. The Subsurface Rights were not separately assessed in the unseated land books of Bradford County. [SOF ¶ 8]. Through a series of deeds dated June 8, 1908 (the "Treasurer's Deeds"), Calvin H. McCauley Jr. ("McCauley

Jr.") acquired the Premises from the Treasurer of Bradford County. [SOF ¶¶ 6-8]. The Treasurer's Deeds were not expressly limited to the surface estate of the Premises and are not stamped "redeemed." [SOF ¶¶ 8, 11-12].

In 1910, McCauley Jr. and his wife conveyed the Premises to CPLC. [SOF ¶ 13]. By way of a deed dated December 14, 1920 (the "CPLC-PGC Deed"), CPLC conveyed the Premises to the Pennsylvania Game Commission. [SOF ¶ 14]. In the CPLC-PGC Deed, CPLC excepted and reserved the Subsurface Estate in the Premises. [SOF ¶ 15]. In 1942, CPLC conveyed its interest in the Subsurface Estate in the Premises to Keystone Tanning and Glue Company. [SOF ¶ 16]. Over the ensuing decades, the Subsurface Estate in the Premises was sold conveyed numerous times until interests therein ultimately vested in IDC in 2000, and by confirmatory instruments in 2021 and 2023. [SOF ¶¶ 17-36].[1]

## PERTINENT PROCEDURAL POSTURE

The PHT initiated this action by filing a Complaint on April 8, 2022. [ECF 1]. IDC filed an Answer and Affirmative Defenses on May 5, 2022. [ECF 8]. Fact discovery has closed. [ECF 29]. This matter is set for trial on November 9 and 10, 2026. [ECF 32].

---

[1] IDC reasonably believes that ExxonMobil and/or XTO Energy owns Subsurface Rights in separate parts of the Premises through the same chain of title from CPLC. IDC does not believe that it is a cotenant with ExxonMobil and/or XTO Energy.

## QUESTION PRESENTED

Whether, under the recently enacted Article VII-a, the PHT's predecessors were divested of their interest in the Subsurface Estate of the Premises by way of the June 1908 Tax Sale, eliminating any claim that they have to the Subsurface Estate of the Premises?

*[Suggested answer: Yes]*

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment if the movant demonstrates that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Determinations about the existence of genuine issues of material fact are drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The non-moving party must point to evidence in the record that creates a genuine issue of material fact. *Id*. The non-moving party must present "more than a mere scintilla of evidence in its favor" in order to overcome a motion for summary judgment. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989).

## ARGUMENT

### I. Article VII-a Forecloses the PHT's Ability to Prevail on Its Claims.

The gist of this proceeding is the PHT's demand that it, not IDC, owns the Subsurface Estate in the Premises. To effectuate this, the PHT's Complaint advances two Counts, one sounding in Quiet Title and the other sounding in Declaratory Judgment. The PHT cannot prevail on either Count as a matter of law.

Count I is a quiet title claim, with the PHT carrying the burden to establish *prima facie* title to the Subsurface Estate in the Premises. *See, Moore v. Commonwealth, Dept, of Environmental Resources*, 566 A.2d 905, 907 (Pa. Commw. Ct. 1989); *see also, Poffenberger v. Goldstein*, 776 A.2d 1037, 1041 (Pa. Commw. Ct. 2001). If the PHT musters *prima facie* title to the Subsurface Estate, the burden shifts to IDC to demonstrate superior title. *Poffenberger*, 776 A.2d at 1041; *Cox's, Inc. v. Snodgrass*, 92 A.2d 540, 541-42 (Pa. 1952); *Commonwealth, Pennsylvania Game Commission v. Ulrich*, 565 A.2d 859 (Pa. Commw. Ct. 1989). IDC raised an affirmative defense that the PHT Complaint did not state a claim upon which relief can be granted [ECF 8, Affirmative Defenses at ¶ 3], and Article VII-a

prevents the PHT from satisfying its initial burden of proving *prima facie* title in Count I of the Complaint.

Article VII-a applies to sales and purchases of unseated lands that occurred prior to its July 12, 2026 effective date. 72 P.S. § 5860.701-A. The statute identifies its prerequisites and the effect of those requirements are met:

> **(a) Sale for nonpayment of taxes**.--Prior to the effective date of this subsection, where the conveyance from the sale of any unseated lands for nonpayment of taxes includes, but is not expressly limited to, the surface estate and, for the tax year for which the sale occurred, the subsurface estate was not separately assessed, the conveyance shall be effective to vest title in the purchaser to the entire property in fee simple, including the severed subsurface oil, gas, mineral or other subsurface estates that are not separately assessed for the tax year for which the sale occurred, subject only to redemption reflected in the official county records or a court order in an action challenging the legal effect of a tax sale commenced within the five-year statutory period of limitations on actions for recovery, or determination or declaration, following the date of the tax sale.

72 P.S. § 5860.702-A(a). The June 1908 Tax Sale of the Premises fits squarely within this framework, and consequently, Article VII-a dictates the result here – that the PHT cannot prevail.

The June 1908 Tax Sale of the Premises occurred in 1908 [SOF ¶ 7], thereby satisfying Article VII-a's application to tax sales that took place prior to its July 12, 2026 effective date. 72 P.S. § 5860.701-A. Each constituent tract of the Premises

was included in the Bradford County Assessment of Unseated Lands immediately preceding the Tax Sale and the Treasurer's Deed for each constituent tract of the Premises identifies that the land conveyed was unseated [SOF ¶ 9], satisfying the requirement that lands be unseated. 72 P.S. § 5860.702-A(a).

Article VII-a applies where the conveyance from the sale of any unseated lands for nonpayment of taxes includes, but is not expressly limited to, the surface estate. *Id.* That is the case here, with the Treasurer's Deed for each constituent tract of the Premises including, but not being expressly limited to, the surface estate. [SOF ¶ 8]. Each entry identifies the acreage of unseated land that was conveyed by the Deputy Treasurer of Bradford County to McCauley, Jr. [SOF ¶¶ 7-8]. There is no express limitation of the June 1908 Tax Sale to any estate in the Premises. [SOF ¶ 7].

There was no separate assessment of the Subsurface Estate in the Premises in the year the June 1908 Tax Sale occurred. 72 P.S. § 5860.702-A(a). The June 1908 Tax Sale occurred on June 8, 1908. [SOF ¶ 7]. The Bradford County unseated land books do not identify a separate assessment of the Subsurface Estate in 1907 or 1908. [SOF ¶ 9]. The Bradford County unseated land books present a single assessment of the Premises per township under the name of each warrantee except for the Collinson Reed and James Shoemaker warrants. [SOF ¶ 9]. Those additional assessments do not involve the Subsurface Estate. [SOF Exhibits 6-7].

Because the record is clear that (1) the conveyance of the unseated Premises at the June 1908 Tax Sale for nonpayment of taxes took place prior to July 12, 2026; (2) the Treasurer's Deeds from the 1908 Tax Sale included but were not expressly limited to the Premises' surface estates; and (3) the Subsurface Estates of the Premises were not separately assessed in the year of the June 1908 Tax Sale, the conveyances to McCauley Jr. pursuant to the June 1908 Tax Sale vested him with title to the entirety of the Premises in fee simple, "including the severed oil, gas, mineral or other subsurface estates that [we]re not separately assessed for the tax year for which the sale occurred." 72 P.S. § 5860.702-A(a). Accordingly, under Article VII-a, the title that vested in McCauley, Jr. is "subject only to redemption reflected in the official county records or a court order in an action challenging the legal effect of a tax sale commenced within the five-year statutory period of limitations on actions for recovery, or determination or declaration, following the date of the tax sale." *Id*. None of those exceptions applies.

The official county records of Bradford County do not reflect a redemption of the June 1908 Tax Sale. [SOF ¶ 11]. The unseated lands books only indicate that the Premises were sold to McCauley Jr. [SOF ¶¶ 7, 9]. Article VII-a places the burden on the party asserting redemption, or benefiting from the redemption, to (1) provide evidence that the right of redemption existed at the time of the challenged transaction and (2) produce either a recorded exemption receipt or the instrument of conveyance

bearing a stamped "redeemed" notation together with a contemporaneously made notation of the redemption in the official county record. 72 P.S. § 5860.703-A. The Treasurer's Deeds bear no "redeemed" notation; and no corresponding notation appears in the official records of Bradford County. [SOF ¶¶ 11, 12].

Likewise, there was no timely challenge to the June 1908 Tax Sale. The June 1908 Tax Sale of the Premises occurred on June 8, 1908. Under Article VII-a, there had to be a court order emanating from an action challenging the legal effect of the June 1908 Tax Sale that was filed within five years of the June 8, 1908 Tax Sale. The existence of this proceeding confirms the absence of a pre-June 1913 lawsuit to challenge the effect of the June 1908 Tax Sale. The PHT commenced this action in 2022, which was 109 years too late, and therefore this challenge is time-barred and is not recognized under Article VII-a. 72 P.S. § 5860.703-A.

To this end, Article VII-a states that it ". . . is intended as a restatement and clarification of the five-year limitation period in section 3 of the act of April 3, 1804 (P.L. 517, No. 124), entitled 'An act directing the mode of selling unseated lands for taxes.'" 72 P.S. § 5860.706-A. Since the Premises' Subsurface Estate reunited with the balance of the Premises as a matter of law, the PHT's present action is one to recover lands, fitting squarely within this limitations period. IDC raised the affirmative defense of statute of limitations [ECF 8 at Affirmative Defenses ¶ 4] and

this action is clearly time-barred since it is literally over a century too late. 72 P.S. § 5860.706-A.

As a matter of law, this extinguished the Proctor-Hill Reservation and the Subsurface Estate was reunited with the other estates in the Premises under McCauley Jr. before he and his wife sold the Premises to CPLC in 1910. [SOF ¶ 13]. *See* 72 P.S. § 5860.702-A(a). That is fatal to the PHT. Following the reunification of the estates in the Premises in McCauley Jr., the Subsurface Estate passed, through various conveyances, to IDC in 2000. [SOF ¶¶ 17-36]. After the 1908 reunification of estates, no part of the Premises was ever subsequently conveyed to the PHT, nor does the PHT claim title to the Subsurface Estate *from* the June 9, 1908 Tax Sale; the PHT's claimed Subsurface Estate title is wholly based on the Proctor-Hill Reservation. [*e.g.*, ECF 1 at ¶¶ 47-48].

As a result, the PHT cannot sustain its quiet title burden to prove *prima facie* title to the Premises' Subsurface Estate. *See Moore*, 566 A.2d at 907; *see also Poffenberger*, 776 A.2d at 1041. There is no instrument that the PHT can rely on to demonstrate *how* it (or its predecessors) owned the Subsurface Estate after 1908. Therefore, the PHT cannot prevail on Count I.

The PHT likewise cannot prevail on Count II of the Complaint, sounding in declaratory judgment. The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes relief only "[i]n a case of actual controversy," and a declaratory judgment claimant

must therefore demonstrate that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Article VII-a makes clear that there is no dispute, case, or controversy between the parties. The law plainly vested title in the Subsurface Estate in McCauley Jr., and any challenge thereto is time barred by law. *See* 72 P.S. § 5860.702-A(a); 72 P.S. § 5860.706-A. To the extent that there was a justiciable controversy here, it is foreclosed by Article VII-a, as demonstrated by the PHT's inability to muster the evidence to carry is burden in a quiet title action.

## II. Article VII-a Represents a Legislative Determination That Must Be Applied to Determine the Effect of the June 1908 Tax Sale.

This proceeding is not the only matter before this Court involving unseated tax sales that occurred decades (or over a century) ago. The passage of time has not been favorable to the existence of documents and witnesses of that era that could present facts of "what", "when", "how" and "why" things occurred under a taxation scheme dating back to the early 1800's. The Pennsylvania Supreme Court's Opinion in *Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Tr.*, 335 A.3d 1108 (Pa. 2025) answered a certified question from the United States Court of Appeals for the Third Circuit on an appeal from this Court, and increased the likelihood that these

types of cases would be characterized by inquiry into the minutiae of century-old details that are not in an accessible public record.

Article VII-a is a clear action by the General Assembly to restore order to this universe by reinforcing the proof the law requires and how it must be presented. Essentially, Article VII-a confirms an equal playing field for all parties when dealing with factual and legal issues. It does not foreclose parties, like the PHT here, from contending that they possess oil, gas and mineral rights, but it prohibits an unfairness that arises from difficulties defending circumstantial insinuations about the meaning and legal effect of documents lacking context or eyewitness testimony.

In *Mack v. Yost*, 63 F.4th 211, 222 (3d Cir. 2023), the Third Circuit observed that "[w]e do not interpret statutes in a vacuum, and Congress does not legislate in one." A statute must instead be read as a deliberate act undertaken with knowledge of the legal landscape the legislature seeks to alter. *See, In re VistaCare Group, LLC*, 678 F.3d 218, 226 (3d Cir. 2012); *Commonwealth v. Edwards*, 256 A3d 1130 (Pa. 2021) ("Finally, we also presume that when enacting legislation, the General Assembly is familiar with extant law"). And where, as here, the legislature has amended an existing statutory scheme, courts "must presume it intends its amendment to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641–42 (2016).

The General Assembly enacted Article VII-a to change the *status quo* that,

after *Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Tr.*, required stitching together incomplete, records, devoid of context, and without eyewitnesses, to reconstruct decades-old (even century-old) details about subsurface severances, taxation, and tax sales of unseated lands. Questions like whether a severed property interest was reported for assessment over a hundred years ago, why a particular tract of unseated lands became subject to tax sale, or whether an individual was serving as an agent for a principal to purchase a specific property at a tax sale of unseated lands, are *at best* three quarters of a century old. The General Assembly clearly recognized the problems inherent in determining what happened a century ago and its legal effect. The enactment of Article VII-a must be read as a deliberate act undertaken with knowledge of those conditions. *See, In re VistaCare Grp., LLC*, 678 F.3d at 226.

This is not to say that Article VII-a changes the legal rights of the PHT or IDC. Rather, Article VII-a affirms the proof necessary under the law for parties to make ownership claims on formerly unseated lands that passed through tax sales. Article VII-a does not prevent a party, like the PHT, from claiming that a severed oil, gas and mineral interest was assessed. Article VII-a does not prevent a party, like the PHT, from claiming that an unseated lands tax sale was redeemed. Article VII-a recognizes that many records are incomplete and witnesses are long gone, so it centers the analysis on what appears in the official county records. 72 P.S.

§5860.702-A; 72 P.S. §5860.703-A. IDC submits that is the "real and substantial effect" the legislature intended – to focus these disputes on public records to avoid pursuits of incomplete histories that are not in official records. *Ross*, 578 U.S. at 641–42.

"When statutory language is plain and unambiguous, the sole function of the courts ... is to enforce it according to its terms. [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *In re Visteon Corp.*, 612 F.3d 210, 220 (3d Cir. 2010), *as amended* (July 15, 2010), *as amended* (July 19, 2010) (internal citations and quotations omitted). In Article VII-a, the General Assembly affirmed the facts necessary to establish the extinguishment of previously severed interests in unseated lands. It is not the role of a court to second-guess that choice or to substitute a rule it might prefer. *See, Bankamerica Corp. v. U.S.*, 462 U.S. 122, 140 (1983). As stated by the United States Supreme Court, "the remedy for any dissatisfaction with the results in particular cases lies with [the legislature] and not with this Court. [The legislature] may amend the statute; we may not." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576 (1982). When Article VII-a is given effect, the import is clear – the PHT cannot prevail.

## CONCLUSION

The recent passage and effectiveness of Article VII-a compels the entry of judgment in IDC's favor, and against the PHT, on all Counts in the Complaint. Article VII-a clarifies and confirms that the PHT cannot establish the *prima facie* title to the Premises' Subsurface Estates, that the PHT needs to prevail on its quiet title claim. Similarly, Article VII-a and its timing requirements moot the existence of any dispute, case, or controversy that could support the PHT's declaratory judgment claim.

There is no genuine issue of material fact that the June 1908 Tax Sale involved unseated lands, occurred before 2026, and the ensuing deeds were not expressly limited to the surface of the Premises. There was no separate assessment of the Subsurface Estate, the official records of Bradford County contain no identification of a redemption, and there was no challenge to the June 1908 Tax Sale within five years of June 8, 1908. Article VII-a confirms longstanding Pennsylvania law that this all served to reunite the Subsurface Estate of the Premises with the surface estate in McCauley Jr. in 1908, with the Subsurface Estate passing along a chain of title that ultimately vested in IDC.

Accordingly, IDC requests that this Court grant this Motion and enter judgment in IDC's favor on all Counts in the Complaint.

Respectfully submitted,

Date: August 3, 2026

By: *s/ Brendan A. O'Donnell*

Robert J. Burnett, Esquire
PA76734
Brendan A. O'Donnell, Esquire
PA309007
HOUSTON HARBAUGH, P.C.
401 Liberty Avenue, 22nd Floor
Three Gateway Center
Pittsburgh, PA 15222
Phone: (412) 281-5060
Fax: (412) 281-4499
*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)

I hereby certify that the Brief in Support of Defendant's Motion for Judgment on the Pleadings contains 4,206 words and complies with Middle District Local Rule 7.8(b)(2), by not exceeding 5,000 words.

Date: August 3, 2026

By: *s/ Brendan A. O'Donnell*

Robert J. Burnett, Esquire
PA76734
Brendan A. O'Donnell, Esquire
PA309007
HOUSTON HARBAUGH, P.C.
401 Liberty Avenue, 22nd Floor
Three Gateway Center
Pittsburgh, PA 15222
Phone: (412) 281-5060
Fax: (412) 281-4499
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I, Brendan A. O'Donnell, hereby certify that a true and correct copy of the foregoing Brief in Support of Motion for Summary Judgment was served upon the following counsel of record on this 3rd day of August 2026 via the Court's Electronic Case Filing (ECF) system which will forward notification of said filing to all counsel of record:

Laura A. Lange, Esquire
5519 Sterling Brook
Houston, TX 77041
lange@proctortrust.com

Justin G. Weber, Esquire
Troutman Pepper
Suite 200, 100 Market Street
PO Box 1181
Harrisburg, PA 17108
Justin.weber@troutman.com

*Counsel for Plaintiffs*

*s/ Brendan A. O'Donnell*
Brendan A. O'Donnell, Esquire