**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES RICE KENDALL and<br>ANN P. HOCHBERG, as Trustees for<br>The Thomas E. Proctor Heirs Trust,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL DEVELOPMENT<br>COMPANY LLC,<br><br>Defendant. | Civil Action No. 22-cv-00518<br><br>Matthew W. Brann<br>Chief United States District Judge |

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---


| | |
|---|---|
| Laura A. Lange<br>PA 310733<br>5519 Sterling Brook<br>Houston, TX 77041<br>lange@proctortrust.com | Justin G. Weber<br>PA 89266<br>TROUTMAN PEPPER LOCKE LLP<br>Suite 200, 100 Market Street<br>P.O. Box 1181<br>Harrisburg, PA 17108-1181<br>717.255.1155<br>717.238.0575 (fax)<br>Justin.Weber@troutman.com |

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii
INTRODUCTION ........................................................................ 1
COUNTERSTATEMENT OF PROCEDURAL AND FACTUAL HISTORY ...... 4
I. The Pennsylvania Supreme Court Determines the Law in Effect at the Time of the 1908 Tax Sales ........................................................................ 4
II. The Legislative History of Act 27 of 2026 ........................................................................ 8
III. The Proctor & Hill Subsurface Estate Was Separately Assessed ................. 12
LEGAL STANDARD ........................................................................ 13
ARGUMENT ........................................................................ 14
I. IDC's Reliance on Act 27 Fails Because the Statute Is Unconstitutional ..... 14
A. Act 27 Effects an Impermissible Deprivation of Vested Rights Under the Pennsylvania Constitution and Violates Federal Due Process ........................................................................ 14
B. Act 27 Violates the Separation of Powers ........................................... 21
C. Act 27 Is an Unconstitutional Uncompensated Taking Under the Pennsylvania Constitution ........................................................................ 24
D. Act 27's Statute of Limitations Provision Violates Due Process ......... 27
E. Act 27 Is Procedurally Invalid Under Article III of the Pennsylvania Constitution ........................................................................ 29
II. IDC Has Not Established the Absence of Genuine Disputes of Material Fact ........................................................................ 35
CONCLUSION ........................................................................ 36

## TABLE OF AUTHORITIES

**Cases**

*Abie State Bank v. Weaver*
282 U.S. 765 (1931)........8

*Baird v. Cahoon*
5 Watts & Serg. 540, 541 (Pa. 1843)........7

*Berckeley Inv. Group, Ltd. v. Colkitt*
455 F.3d 195, 201 (3d Cir. 2006)........13

*Breisch v. Coxe*
81 Pa. 336, 346 (1876)........7

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)........13

*City of Philadelphia v. Commonwealth*
838 A.2d 566 (Pa. 2003)........3, 29, 30, 31, 34

*Commonwealth v. Shaffer*
734 A.2d 840 (Pa. 1999)........23

*Commonwealth v. Sutley*
378 A.2d 780 (Pa. 1977)........22, 23

*Commonwealth ex rel. Kelley v. Brown*
193 A. 258 (Pa. 1937)........28

*Commonwealth v. Neiman*
84 A.3d 603 (Pa. 2013)........29-31

*Commonwealth, Dep't of Transp. v. McCafferty*
758 A.2d 1155 (Pa. 2000)........29

*Crisante v. J.H. Beers, Inc.*
443 A.2d 1150 (Pa. Super. Ct. 1982)........28

*Dale v. Medcalf*
9 Barr. 108 (Pa. 1848)........15

*DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*
53 F.3d 592 (3d Cir. 1995)........19

*DeWeese v. Weaver*
824 A.2d 364 (Pa. Commw. Ct. 2003)........29

*Eastern Enterprises v. Apfel*
524 U.S. 498 (1998)........................................................................ 18-20

*Ferki v. Frantz's Transfer Co.*
31 A.2d 586 (Pa. Super. Ct. 1943) ..............................................................28

*Forest v. United States Postal Serv.*
97 F.3d 137 (6th Cir. 1996) ........................................................................28

*Gibson v. Commonwealth*
415 A.2d 80 (Pa. 1980)............................................................... 17, 22-23

*Herder Spring Hunting Club v. Keller*
143 A.3d 358 (Pa. 2016)............................................................................ 5, 35

*Ieropoli v. AC&S Corp.*
842 A.2d 919 (Pa. 2004)..............................................................................17

*In re State Highway Route No. 185, Schuylkill Cnty. (Glen Alden Coal Co.)*
14 A.2d 76 (Pa. 1940)..................................................................................25

*Jenkins v. Hosp. of Med. College of Pa.*
634 A.2d 1099 (Pa. 1993)............................................................................17

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*
494 U.S. 827 (1990)....................................................................................19

*Kay v. Pa. R.R. Co.*
65 Pa. 269 (Pa. 1870)...................................................................................18

*Krenzelak v. Krenzelak*
469 A.2d 987 (Pa. 1983).................................................................. 20, 21, 25

*Landgraf v. USI Film Prods.*
511 U.S. 244 (1994)....................................................................................19

*Leach v. Commonwealth*
118 A.3d 1271 (Pa. Commw. Ct. 2015) .......................................................31

*Leach v. Commonwealth*
141 A.3d 426 (Pa. 2016)..............................................................................32

*Lewis v. Pennsylvania R. Co.*
69 A. 821 (Pa. 1908)....................................................................................17

*Marbury v. Madison*
5 U.S. (1 Cranch) 137 (1803) ......................................................................21

*Marcavage v. Rendell*
936 A.2d 188 (Pa. Commw. Ct. 2007) .........................................................31

*McCoy v. Michew*
7 Watts & Serg. 386 (Pa. 1844)....................................................................7

*McCullough v. Com. of Virginia*
172 U.S. 102 (1898)..................................................................................19

*Menges v. Dentler*
33 Pa. 495 (1859)..................................................................... 15-17, 21, 22

*Middletown Twp. v. Lands of Stone*
939 A.2d 331 (Pa. 2007)...........................................................................26

*Miller v. City of Beaver Falls*
82 A.2d 34 (Pa. 1951)...............................................................................24

*Pennsylvania Coal Co. v. Mahon*
260 U.S. 393 (1922)..................................................................................25

*Pennsylvania Game Commission v. Thomas E. Proctor Heirs Trust*
No. 22-1587, 2026 WL 2209403, --- F.4th ---
(3d Cir. July 31, 2026)........................................................... 1, 12, 35

*Pennsylvania Game Commission v. Thomas E. Proctor Heirs Trust*
335 A.3d 1108 (Pa. 2025)...................................................................*passim*

*Pennsylvania Game Commission v. Thomas E. Proctor Heirs Tr.*
No. 1:12-CV-1567, 2021 WL 5759030 (M.D. Pa. Dec. 3, 2021)................35

*Pennsylvania Mut. Life Ins. Co. v. City of Philadelphia*
88 A. 904 (Pa. 1913)..................................................................................26

*Pennsylvania State Ass'n of Jury Commissioners v. Commonwealth*
64 A.3d 611 (Pa. 2013)..............................................................................31

*Phantom Fireworks Showrooms, LLC v. Wolf*
198 A.3d 1205 (Pa. Commw. Ct. 2018).......................................................31

*Powell v. Lantzy*
34 A. 450, 451 (Pa. 1896)............................................................................6

*Rebel v. Standard Sanitary Mfg. Co.*
16 A.2d 534 (Pa. 1940)........................................................................ 17-18

*Robinson Twp. v. Commonwealth*
147 A.3d 536, 585 (Pa. 2016)................................................................ 26-27

*Scudder v. Smith*
200 A. 601 (Pa. 1938)................................................................................32

*Shonk v. Brown*
61 Pa. 320 (1869) ..... 17

*St. Joseph Lead Co. v. Potter Twp.*
157 A.2d 638 (Pa. 1959) ..... 23

*Steven I. v. Cent. Bucks Sch. Dist.*
618 F.3d 411 (3d Cir. 2010) ..... 28

*Stewart v. Shoenfelt*
13 Serg. & Rawle 360 (Pa. 1824) ..... 7

*United Artists Theater Cir., Inc. v. City of Philadelphia, Philadelphia Hist. Comm'n*, 595 A.2d 6 (Pa. 1991) ..... 25

*Washington v. Dep't of Pub. Welfare of Commonwealth*
188 A.3d 1135 (Pa. 2018) ..... 33

*Wilkinson v. Leland*
27 U.S. 627 (1829) ..... 25

*Willcox v. Penn Mutual Life Ins. Co.*
55 A.2d 521 (Pa. 1947) ..... 25

*Williams v. Borough of West Chester, Pa.*
891 F.2d 458 (3d Cir. 1989) ..... 13

**Statutes**

Act 27 of 2026 (Article VII-A), 72 P.S. § 5860.701-A *et seq* ..... *passim*

Act of 1804 ..... 11

Act of 1806 ..... 36

Act of 1887 ..... 11

Real Estate Tax Sale Law of 1947 ..... 8

**Rules and Other Authorities**

Federal Rule of Civil Procedure 56(a) ..... 13

Black, A Treatise on the Law of Tax Titles, § 276) ..... 8

**Constitutional Provisions**

U.S. Const. amend. XIV ..... 18- 21, 28

Pa. Const. art. I, § 9 ........ 15, 16, 18, 21
Pa. Const. art. I, § 10 ........ 24
Pa. Const. art. I, § 11 ........ 15, 16, 18, 21
Pa. Const. art. III, § 1 ........ 31-32
Pa. Const. art. III, § 3 ........ 29-31
Pa. Const. art. III, § 4 ........ 33-34

Plaintiffs, the Trustees of the Thomas E. Proctor Heirs Trust (the "Proctor Trust") respectfully submit this Brief in Opposition to International Development Company, LLC's ("IDC") Motion for Summary Judgment.

## INTRODUCTION

IDC's motion rests on a single, constitutionally infirm pillar: Article VII-A of Act 27 of 2026, a hastily enacted statute, retroactively rewrites over a century of settled Pennsylvania property law to strip the Proctor Trust of vested subsurface rights that the Pennsylvania Supreme Court unanimously confirmed just last year. Act 27 cannot be constitutionally applied to this case.

In *Pennsylvania Game Commission v. Thomas E. Proctor Heirs Trust*, 335 A.3d 1108 (Pa. 2025) (hereinafter "*PGC*"), the Pennsylvania Supreme Court held—in a unanimous 7-0 decision—that under the law in effect at the time of the 1908 tax sales at issue, the sales did not divest the Proctor Trust's predecessors of their separately held subsurface estate. The Court held that the *Powell* Rule barred a defaulting surface owner or its agent from acquiring a neighbor's title through a tax sale caused by the surface owner's own default. On July 31, 2026, the Third Circuit Court of Appeals affirmed the District Court's judgment in favor of the Proctor Trust in the related Josiah Haines warrant litigation. *See Pa. Game Comm'n v. Thomas E. Proctor Heirs Tr.*, No. 22-1587, 2026 WL 2209403, --- F.4th --- (3d Cir. July 31, 2026).

After the Supreme Court's ruling, the General Assembly enacted Act 27 as an attempted retroactive legislative override of the judiciary.  The manner of Act 27's passage is as revealing as its content. Act 27 derived from House Bill 96, which was introduced as a narrow homeowner-protection measure to avoid tax sales—a bill aptly titled "Protecting Vulnerable Individuals at Risk of Losing Their Homes." A last-minute amendment in the Senate did the opposite: it grafted on an entirely new "Article VII-A" governing "Unseated Lands" that retroactively strips owners of their severed subsurface estates—abolishing the *Powell* Rule and imposing a limitations period that had expired a century earlier. That amendment was not publicly disclosed until it was introduced in the Senate late in the evening on Saturday July 11, 2026; the House then encountered it for the first and only time on a single day, concurring the next day, and the Governor signed the bill into law on Sunday, July 12, 2026—less than 24 hours after it became public.

IDC now asks this Court to apply that "24 hour legislation" to retroactively divest the Proctor Trust of its subsurface rights.  This Court should deny the motion. Act 27 is unconstitutional in multiple independent respects, and any one of them is fatal to IDC's motion. As applied to this case, Act 27 substantively violates both the Pennsylvania and U.S. Constitutions by (1) retroactively depriving the Trust of vested property rights, (2) violating the separation of powers, (3) effecting an uncompensated taking, and (4) imposing an already-expired limitations period.

The Act is also procedurally invalid under Article III of the Pennsylvania Constitution, whose mandatory constitutional directives require compliance from the General Assembly. The Senate's grafting of a retroactive mineral-rights divestiture onto a homeowner-notice bill violates the single-subject rule, the original purpose doctrine, and the three days consideration requirement. This "24 hour legislation" is "exactly [the type of legislation] that the Constitutional amendments of 1874 were meant to prohibit." *City of Philadelphia v. Com.*, 838 A.2d 566, 575 (Pa. 2003).

And even setting aside the constitutional infirmities, genuine disputes of material fact preclude summary judgment. The evidence establishes that Bradford County assessed the Proctor & Hill subsurface estate on the seated list due to coal operations. Such separate assessment contradicts IDC's factual predicate for its motion.

The Pennsylvania Constitution does not permit the General Assembly to legislate away a party's day in court, to take one litigant's property and hand it to another, or to enact sweeping retroactive changes to century-old property rules over 24 hours. The Court should hold that Act 27 cannot constitutionally be applied to this case.

## COUNTERSTATEMENT OF PROCEDURAL AND FACTUAL HISTORY

This matter involves property ("Premises") that was initially part of the PGC case. After the Pennsylvania Board of Property determined that, as between IDC and the Game Commission, IDC owned the Premises, the Proctor Trust filed this action against IDC. *See* Complaint, Doc. 1, ¶¶ 65-70. By way of background, an overview of (1) the law in effect at the time of the 1908 tax sales, as previously determined by the Pennsylvania Supreme Court, and (2) the Act's legislative history is necessary to illuminate the substantive and procedural infirmities of Act 27.

### I. The Pennsylvania Supreme Court Determines the Law in Effect at the Time of the 1908 Tax Sales

It is undisputed that heirs of Proctor & Hill were the sole owners of the subsurface estate of the Premises at issue prior to the 1908 tax sale. IDC contends that the 1908 tax sales divested the Proctor Trust of their property rights. Notably, the properties comprising the Premises were at issue in the *PGC* case. The bellwether warrant at issue in the District Court trial in *PGC*, the Josiah Haines warrant, involved the same 1908 tax sale, the same assessment records, and the same deed transactions, including the 1920 deed from the Central Pennsylvania Lumber Company ("CPLC") to the Game Commission which was made subject to the Proctor & Hill reservation (through which IDC now purports to claim title).

As the Pennsylvania Supreme Court has already determined, under the law in effect at the time of the tax sales, those sales did *not* divest the Trust's predecessors of their subsurface rights if *either* (1) the transaction severing ownership of the surface and subsurface estates had been reported to the county taxing authorities before 1908, *or* (2) the purchaser at the tax sales was an agent of the defaulting surface owner, CPLC.

In *Herder Spring Hunting Club v. Keller*, 143 A.3d 358 (Pa. 2016), the Supreme Court determined that, under the law in effect at the time of the tax sales, where a severance transaction was reported, the ensuing tax sale of the surface conveyed only the surface estate, regardless of whether the subsurface was subject to a separate assessment. *Id.* at 368 (noting reporting of the severance "would have triggered a separate assessment and taxation of the Keller's mineral estate (or no taxation if it had no value)").

And last year, in *PGC*, the Supreme Court unanimously held that, under the law in effect at the time of the tax sales, where an agent of the surface owner purchased the property at a tax sale caused by the surface owner's failure to pay the assessed taxes, the agent's purchase *automatically* operated merely as a redemption of the surface owner's pre-existing title; it "did *not* divest the subsurface owners of their [separately held] interest." 335 A.3d at 1110 (emphasis added). In other words, where the tax-sale purchaser was an agent of the surface

owner, the subsurface owner continued to retain its vested right to the subsurface estate; the "purchase did not impact, let alone extinguish, the [subsurface owner's] interest." *Id.* at 1124.

In *PGC*, the Court relied on a fundamental rule of equity, known as the "*Powell* Rule," that has been the law of Pennsylvania for well over a century. Under that rule, "[o]ne cannot profit by his own wrong, and build up or acquire a title founded upon his own neglect of duty." *Id.* at 1111 (quoting *Powell v. Lantzy*, 34 A. 450, 451 (Pa. 1896)). More specifically, "one cannot, by a purchase at a tax sale caused by his failure to pay taxes which he owed the state, or which he was otherwise legally or morally bound to pay, acquire a better title, or a title adverse to that of other parties in interest." *Id.* (quoting *Powell*, 34 A. at 451). While conceding that the *Powell* Rule was the law of Pennsylvania (and virtually all other jurisdictions) at the time of the tax sales, the Game Commission (and IDC as *amici*) insisted that unseated landowners did not have a duty to pay the taxes assessed on the property.

The Supreme Court held in its 7-0 decision that the Game Commission's position was contradicted by (1) more than a century of case law, which expressly stated that owners of unseated land *did* have a duty to pay the taxes assessed on

that land, *see id.* at 1121 & n.15 (collecting and quoting cases)[1] and (2) statutory law in effect at the time, "[t]he plain language of [which] obligated unseated landowners to pay the taxes levied on their unseated land" and "exhibit[ed] the legislature's contemporaneous understanding that unseated landowners owed a duty to the state to pay the taxes levied on their land," *PGC*, 335 A.3d at 1122–33.

Because unseated landowners had a duty to pay the taxes assessed on their land, the *Powell* Rule barred a defaulting surface owner—including, specifically, CPLC, IDC's predecessor in interest here—from "purchasing [at the ensuing tax sale] more than the … surface estate it owned prior to the sale or acquir[ing] title adverse to [the owners of a severed] subsurface estate." *PGC*, 335 A.3d 1108. "Rather, any purchase by CPLC [or any other defaulting surface owner] at the [] tax sale operated only as payment of the taxes owed or a redemption of its pre-existing interest in the warrant's surface estate." *Id.* "Further, [the defaulting surface owner] could not evade application of the *Powell* Rule by having its agent [] make the purchase." *Id.* "Such an arrangement, if not positively fraudulent, is at

---

[1] *See, e.g.*, *Stewart v. Shoenfelt*, 13 Serg. & Rawle 360, 372, 374 (Pa. 1824) (unseated landowner who fails to pay the taxes on such land is "guilty of a breach of duty" and is "a defaulter"); *Baird v. Cahoon*, 5 Watts & Serg. 540, 541 (Pa. 1843) (unseated landowner "has duties … to pay up the taxes on his unseated lands"); *McCoy v. Michew*, 7 Watts & Serg. 386, 391 (Pa. 1844) ("If there be hardship, it is one which can easily be avoided by performing the duty which the law imposes upon [the owner], to return the land and pay his taxes."); *Breisch v. Coxe*, 81 Pa. 336, 346 (1876) ("[T]he payment of taxes [on unseated land] is a duty, and a failure to perform it is the fault of the owner.").

any rate an attempt to evade the law, to which the courts will lend no countenance." *Id.* at 1123 n.20 (quoting Black, A Treatise on the Law of Tax Titles, § 276).

The Supreme Court further held that, under the law in effect at the time of the tax sales, the Trust's *Powell* Rule argument is *not* foreclosed by the statutory limitation on the time within which a tax sale can be challenged or a redemption of a pre-existing interest can be sought. *Id.* at 1124. That time bar does not apply to arguments, like the Trust's, seeking to determine how a "tax sale purchase operated at the time it was made." *Id.* Put differently, because a tax-sale purchase by the agent of a defaulting surface owner *automatically* operated "as a redemption *at the time it was made*," the time bar on challenges or redemptions had "no application." *Id.* (emphasis added).

## II. The Legislative History of Act 27 of 2026

Act 27 of 2026 is the enactment of House Bill 96 of the 2025–2026 Regular Session. The bill was introduced in the House of Representatives on January 14, 2025. As introduced (Printer's No. 79),[2] the bill was a narrow homeowner-protection measure amending the Real Estate Tax Sale Law of 1947 to allow a

---

[2] The Court can take judicial notice of the General Assembly's bills, proposed amendments, and legislative history. *Abie State Bank v. Weaver*, 282 U.S. 765, 778 (1931). The original House Bill 96 of 2025 is available at https://www.palegis.us/legislation/bills/text/PDF/2025/0/HB0096/PN0079.

property owner to designate an individual to receive notice of delinquent real estate taxes; the sponsors described its subject as "Protecting Vulnerable Individuals at Risk of Losing Their Homes."[3]

The bill moved through the House in the spring of 2025. On May 7, 2025, after minimal line edits (Printer's No. 1627)[4] the bill passed the House on third consideration and final passage by a vote of 201-2. The bill was then transmitted to the Senate. After a period of no action, the bill was re-reported as committed on March 23, 2026, and thereafter was laid on and removed from the table twice—on June 3, 2026, and again on June 30, 2026.

In the evening of Saturday, July 11, 2026, the Senate amended the bill on third consideration—producing Printer's No. 3767[5]—by a vote of 36-14. The bill passed the Senate on Sunday, July 12, 2026. The Senate's amendment did not refine the notice provisions the House had passed; it added an entirely new Article VII-A, entitled "Unseated Lands," that retroactively vests severed subsurface oil, gas, and mineral estates in tax-sale purchasers, restricts redemptions of such sales,

---

[3] *See, e.g.*, Memo from Representative Chris Pielli to All House Members (Dec. 11, 2024), https://www.palegis.us/house/co-sponsorship/memo?memoID=44209&document=HB96.

[4] Available at https://www.palegis.us/legislation/bills/text/PDF/2025/0/HB0096/PN1627.

[5] Available at https://www.palegis.us/legislation/bills/text/PDF/2025/0/HB0096/PN3767.

and creates a retroactive statute of limitations to any determinations of the effect of such tax sales that expired decades ago (the "Unseated Lands Amendment"). None of the House's three 2025 considerations had addressed this subject. The same was true of the Senate's two prior considerations of the bill. The text of the new Unseated Lands Amendment was not publicly disclosed until July 11, 2026.[6]

The next day, Sunday July 12, 2026, the bill returned to the House with the Senate amendments and passed on concurrence by a vote of 167-35. Thus, the House encountered the Unseated Lands Amendment for the first and only time on a single day's consideration. The bill was signed in both the House and the Senate, presented to the Governor, and approved by the Governor—all on July 12, 2026—becoming Act No. 27 of 2026. In sum, the entire enacted version of the legislation, containing the Senate's newly added Article VII-A, went from amendment to gubernatorial approval in less than 24 hours. *See* Bill History, available at https://www.palegis.us/legislation/bills/2025/hb96.

---

[6] *See* Senate Roll Call Vote Summary, noting it occurred Saturday, July 11, 2026 at 9:30 p.m. https://www.palegis.us/senate/roll-calls/summary?sessYr=2025&sessInd=0&rcNum=473.

Article VII-A is plainly an attempt to change—retroactively[7]—nearly every aspect of the law that *PGC* determined was in effect at the time of the 1908 tax sales.

*First*, Act 27 retroactively abolishes the *Powell* Rule, which prevented a defaulting surface owner from acquiring a better title at a tax sale. *PGC*, 335 A.3d at 1119. Section 702-A(b)(1) of Act 27 provides that the statute "shall apply without regard to whether the purchaser owned any estate in the property at the time taxes became due"—expressly permitting defaulting surface owners to seize their neighbor's separately held subsurface estate through their own default.

*Second*, Act 27 purports to eliminate the duty of unseated landowners to pay taxes. Section 705-A provides that "[t]he duty to pay property taxes on unseated land shall be a charge against the land only and not a duty of the owner." This directly contradicts *PGC*, as well as over two centuries of precedent and the Act of 1887.

*Third*, Act 27 imposes a five-year limitations period on challenges to tax sales that expired more than a century ago. Section 706-A characterizes this as a "restatement and clarification" of the Act of 1804's limitations period, but the

[7] Indeed, Article VII-A *cannot* have any prospective effect because the legal regime regarding tax sales of unseated land—the body of law that controls this case—ceased to exist in the 1940s. *See PGC*, 335 A.3d at 1110 (explaining that the regime existed "prior to 1947, [when] Pennsylvania distinguished between seated and unseated land").

Supreme Court has already held that the time bar applied only to procedural challenges to tax sales—not to determinations of the effect of a tax sale. *PGC*, 335 A.3d at 1124.

*Fourth*, Act 27 restricts redemption to cases where a "recorded redemption receipt" or a deed bearing a "stamped 'redeemed' notation" appears in the official county records. Section 703-A. But the Supreme Court held that a purchase by a defaulting surface owner's agent automatically operated as a redemption at the time of the purchase—it required no recorded notation. *PGC*, 335 A.3d at 1124.

Act 27 does not "clarify" or "restate" existing law, as IDC contends. It repudiates the Pennsylvania Supreme Court's unanimous determination of what that law was and has always been.[8]

## III. The Proctor & Hill Subsurface Estate Was Separately Assessed

In addition to the factual findings in the *PGC* trial that (1) the Proctor & Hill severance transaction was reported, and (2) the tax sale purchaser was the agent of CPLC in the 1908 tax sale, the evidence establishes that the Proctor & Hill subsurface was separately assessed. Proctor & Hill had active coal operations on

[8] On July 31, 2026—after Act 27's enactment—the Third Circuit affirmed the District Court's judgment in favor of the Trust in the related Josiah Haines warrant litigation. The Third Circuit applied the Pennsylvania Supreme Court's holding in *PGC* as binding precedent on the controlling question of state property law. *Pa. Game Comm'n*, 2026 WL 2209403 at *10. The Third Circuit's decision underscores that the settled law—before Act 27's attempted legislative override—unequivocally supports the PHT's claims.

the subsurface estate, and Bradford County assessed coal operations on the *seated* list. Pl.'s Response to Def.'s SOF ¶¶ 6, 9, Exhibits 1-3. Correspondence from 1920 between the Trustees of the Proctor Estate and Calvin McCauley Jr. states that "[t]he taxes paid last year by Mr. George R. Hill on account of the Proctor & Hill interests in minerals amounted to $175.40." Pl.'s Response to Def.'s SOF ¶ 9, Ex. 3. Thus, the Proctor & Hill subsurface estate was treated as separately taxable property in Bradford County, and Proctor & Hill paid those taxes.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view all evidence and draw all reasonable inferences in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The non-moving party need present only "more than a mere scintilla of evidence in its favor" to overcome a motion for summary judgment. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Where, as here, the statute upon which the movant relies is unconstitutional as applied, the motion fails as a matter of law. *See* Fed. R. Civ. P. 56(a).

## ARGUMENT

IDC's motion for summary judgment depends entirely on the proposition that Article VII-A of Act 27 retroactively extinguished the Proctor & Hill reservation and divested the Proctor Trust's predecessors of their subsurface estate in the Premises. Because Act 27 is unconstitutional under both the Pennsylvania and U.S. Constitution, IDC's motion fails in its entirety.

Even absent the constitutional deficiencies, IDC's motion fails because genuine disputes of material fact exist. The Proctor Trust's evidence establishes that the Proctor & Hill severed subsurface estate was separately assessed by Bradford County on the seated list.

### I. IDC's Reliance on Act 27 Fails Because the Statute Is Unconstitutional

#### A. Act 27 Effects an Impermissible Deprivation of Vested Rights Under the Pennsylvania Constitution and Violates Federal Due Process

Article VII-A of Act 27 seeks to change the rules governing the effect of the 1908 tax sales more than a hundred years after they occurred. To accomplish this feat, Act 27 attempts an act of legislative time travel; it retroactively alters the law governing tax sales of unseated land, which was repealed over 70 years ago. This is a transparent attempt to reverse the outcome of *PGC*—which the Pennsylvania Supreme Court decided based on the law that was *actually* in effect at the time of the tax sales—and cases presenting the same issues, like this one.

But such legislative time travel is constitutionally prohibited under Article 1, Sections 9 and 11 of the Pennsylvania Constitution. Indeed, the Pennsylvania Supreme Court has long held that a statute may not retroactively deprive a person of vested rights. For example, in *Dale v. Medcalf*, 9 Barr. 108 (Pa. 1848), the Pennsylvania Supreme Court considered whether a sheriff's deed had divested the title of the defendant and passed it to the purchaser. Under the law in effect at the time of the sheriff's sale, as previously construed by the Court, the sheriff's deed did not divest the defendant's title but rather was void. But in a statute enacted after the deed, the legislature said that such deeds were retroactively valid and passed title to the purchaser. *Id.* at 109. *Dale* held this retroactive legislation "unconstitutional and void." *Id.* at 111. As the Pennsylvania Supreme Court explained, the legislature could not "validate such a sale to the injury of another party"; it could not, "[i]n plain English, "take one man's property and give it to another." *Id.* at 110. In words directly applicable to this case, the Court noted the pernicious nature of such retroactive legislation: "The acts, though they are general in form, are always intended to operate on particular cases…. The growing frequency of these invasions of private rights renders it necessary that they should be resisted and disregarded where they infringe the constitution." *Id.* at 111.

The Pennsylvania Supreme Court has heeded that call for judicial vigilance. To take another example, in *Menges v. Dentler*, 33 Pa. 495 (1859), the Court

resolved a dispute between the heirs of the owner of a property and an individual (Oyster) who held an 1839 sheriff's deed to the property. Under the law in effect at the time of the deed, the deed did not pass title to Oyster, and the heirs were therefore declared to hold title. *Id.* at 497. But a subsequent statute, enacted in 1843, retrospectively declared the sheriff's deed effective to pass title. *Menges* held that the 1843 statute violated Sections 9 and 11 of the bill of rights of the Pennsylvania constitution, which declare that "no man shall be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land: and that the courts shall be always open to every man, so as to afford remedy by due course of law for all invasions of rights." *Id.* at 497.

The Court explained that these constitutional provisions are "imperative limitations of legislative authority, and imperative impositions of judicial duty." *Id.* at 498. In construing these provisions, the Court explicated "the phrases, 'by due course of law,' and 'by the law of the land'":

> The law which gives character to a case, and by which it is to be decided (excluding the forms of coming to a decision), is the law that is inherent to a case, and constitutes part of it *when it arises as a complete transaction between the parties*. If this law be changed or annulled, the case is changed, and just denied, and the due course of law violated.
>
> … [A] case [involving the question of whether a particular conveyance of property is valid or invalid] cannot be decided by due course of law, apart from the particular law, statutory or customary, that constitutes part of it, and gives it class and character. In the very nature of things, a law that is enacted after the case has arisen can be no part of the case. Such a law can have only a forced and unnatural relation to

> the case, and must produce an untrue decision; a decision, not of the case arising between the parties, as it ought to be, but of a case partly created by the legislature.
>
> When, therefore, the constitution declares that it is the exclusive function of the courts to try private cases of disputed right, and that they shall administer justice "by the law of the land," and "by due course of law;" it means to say, that *the law relating to the transaction in controversy, at the time when it is complete, shall be an inherent element of the case, and shall guide the decision; and that the case shall not be altered, in its substance, by any subsequent law.*

*Id.* at 498–99 (emphases added); *see also Shonk v. Brown*, 61 Pa. 320, 327 (1869) (explaining "retrospect laws are [constitutionally] supported" only "where they … *disturb no vested right* but only vary remedies.") (emphasis added); *Lewis v. Pennsylvania R. Co*., 69 A. 821, 823 (Pa. 1908) ("the law of the case at that time when it became complete is an inherent element in it; and, if changed or annulled, the law is annulled, justice denied, and the due course of law is violated.").

The Pennsylvania Supreme Court has continued to apply these well-established principles, expanding the same constitutional protections to vested *intangible* rights, including causes of action that have accrued prior to the enactment of the challenged legislation. *See, e.g.*, *Ieropoli v. AC&S Corp.*, 842 A.2d 919, 929–30 (Pa. 2004) (analyzing *Menges* and holding that "a statute may not extinguish a cause of action that has accrued"); *Jenkins v. Hosp. of Med. College of Pa.*, 634 A.2d 1099, 1104–05 (Pa. 1993) (same); *Gibson v. Commonwealth*, 415 A.2d 80, 83 (Pa. 1980) (citing *Menges*) (same); *Rebel v.*

*Standard Sanitary Mfg. Co.*, 16 A.2d 534, 537 (Pa. 1940) (same); *Kay v. Pa. R.R. Co.*, 65 Pa. 269, 277 (Pa. 1870) (same).

Under this long line of well-settled jurisprudence, Act 27, if applied to this case, would violate the prohibition on retroactive deprivation of vested rights set forth in Article 1, Sections 9 and 11 of the Pennsylvania Constitution. Act 27 purports to retroactively disturb *vested* rights. In *PGC*, the Pennsylvania Supreme Court held that, under the law in effect at the time of the at-issue tax sales, tax-sale purchases by agents of the defaulting surface owner "did *not divest* [the separate subsurface owners] of their then-existing interest in the warrant's subsurface estate"; title to the subsurface estate *continued* to be *vested* in those owners and was not disturbed by the tax sale. *PGC*, 335 A.3d at 1124 (emphasis added). But under the retroactive changes made by Act 27, those same tax-sale purchases *would* divest the subsurface rights, strip the subsurface owner of their title, and convey the title to the defaulting surface owner. It is difficult to imagine a more quintessential example of a retroactive deprivation of vested rights than a statute that seeks to transfer property ownership by flipping the effect of tax sales that occurred over 100 years ago.

In addition to violating Pennsylvania state constitutional law, the retroactive legislation violates the Fourteenth Amendment's Due Process Clause. *See E. Enters. v. Apfel*, 524 U.S. 498 (1998) (holding that the Coal Act's retroactive

imposition of obligations reaching back 30-50 years was unconstitutional and implicated fundamental principles of fairness). The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law. "Indeed, one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600–01 (3d Cir. 1995). The U.S. Supreme Court has long held that "no state legislation could disturb" a "vested right." *McCullough v. Com. of Virginia*, 172 U.S. 102, 123 (1898).

The Due Process analysis is heightened when a law is given retroactive effect. "The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) (noting that retroactivity raises "particular concerns" because the Legislature may use it for "retribution against unpopular groups or individuals"). The "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.* at 265 (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (SCALIA, J., concurring)). Retroactive application of new

legislation will offend the due process clause if such application is irrational or arbitrary, "[bear[ing] no legitimate relation to the interest which the Government asserts supports the statute." *Apfel*, 524 U.S. at 502; *see also Krenzelak v. Krenzelak*, 469 A.2d 987, 991 (Pa. 1983) (explaining that retrospective laws are deemed reasonable only where they "impair no contract and disturb no vested right").

Act 27 attacks the Trust's vested property rights. Indeed, IDC acknowledges that the Act purports to transfer title from Proctor & Hill. The statute's section (b)(1) — providing that it applies regardless of whether the purchaser owned any estate in the property at the time taxes became due — has no rational basis. The *Powell* Rule, which this provision abrogates, rests on a longstanding, universal equitable principle: one cannot profit from one's own wrong. A legislature that inverts this principle to benefit a party who caused the harm at the expense of an innocent party who held a recorded property interest for over a century cannot be said to be acting rationally.

Moreover, the government exception in section (b)(2), which exempts governmental entities' subsurface estates from the statute's reach, reveals that the legislature understood the constitutional sensitivity of retroactively extinguishing subsurface rights, yet chose to protect only government-owned interests while stripping private owners of their rights. *Krenzelak*, 469 A.2d at 994 (holding

retroactive application of Divorce Code provision would violate due process rights of third party grantees of property). This selective application undermines any claim of a legitimate public purpose and confirms the serious constitutional concerns.

Act 27 is the kind of retroactive legislation Article 1, Sections 9 and 11 of the Pennsylvania Constitution and the Due Process Clause condemn. It retroactively alters the legal regime governing the effect of the 1908 tax sale—a transaction that was "complete" over a century ago—to strip the Proctor Trust of rights that the Pennsylvania Supreme Court has confirmed were vested in the Trust's predecessors at that time. Accordingly, it is unconstitutional and cannot be applied in this case.

### B. Act 27 Violates the Separation of Powers

Act 27 unconstitutionally encroaches on the judicial function by attempting to override the Pennsylvania Supreme Court's unanimous determination of the law in *PGC*. "It is emphatically the duty and province of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). The legislature cannot dictate the outcome of a judicial case that the Pennsylvania Supreme Court has already decided on the merits by retroactively changing the law. As the Court explained in *Menges*: "A law that is enacted after the case has arisen can be no part of the case." 33 Pa. at 498-99.

Under Pennsylvania law, the separation of powers doctrine imposes a firm constitutional bar against retroactive legislative action that overturns, nullifies, or interferes with judicial decisions or accrued rights established by Pennsylvania Supreme Court precedent. *Com. v. Sutley*, 378 A.2d 780, 783-784 (Pa. 1977). The Pennsylvania Supreme Court has consistently held that the legislature may not, by statute, retroactively command courts to reopen final judgments, extinguish vested rights that accrued under judicial decisions, or overrule the Supreme Court's authoritative interpretation of a statute as applied to past conduct.[9] "[A]ny encroachment upon the judicial power by the legislature is offensive to the fundamental scheme of our government." *Id*. at 783.

The principle traces back to *Menges*, 33 Pa. at 498-99, which established that a law enacted after the case has arisen can be no part of the case, and that the law relating to the transaction in controversy at the time when it is complete is an inherent element of the case and guides the decision. In addition, where the legislature retroactively attempts to nullify rights or causes of action that were created or recognized by judicial decision, it violates the separation of powers. *Gibson*, 415 A.2d at 83.

[9] The legislature retains the authority to prospectively amend statutes to supersede judicial interpretations. *Id.*

In *Gibson*, after the Supreme Court had abrogated the doctrine of sovereign immunity allowing tort claims against the Commonwealth, the General Assembly promptly enacted statutory sovereign immunity and expressly applied it retroactively. 415 A.2d at 81-82. The Supreme Court struck down the retroactive application of the statute, holding that the separation of powers doctrine prevents the legislature from disturbing actions which have accrued under the judiciary's authority. *Id.* at 83.

The separation of powers doctrine also prohibits the legislature from retroactively overruling the Supreme Court's authoritative interpretation of a statute. *Com. v. Shaffer*, 734 A.2d 840, 843 (Pa. 1999) ("Although the legislative history accompanying the amendment indicated that certain legislators desired to overrule our decision in [*Commonwealth v.*] *Besch*, the legislature lacked authority to do so."). "The legislature cannot, by an act of assembly, overrule a judicial decision." *Sutley*, 378 A.2d at 784. "Nor can the legislature create retroactive authority by passing 'clarifying' legislation." *Shaffer*, 734 A.2d at 843-44. Indeed, "[i]t is elementary that the legislature cannot create authority retroactively simply by passing 'clarifying' legislation. The intent of the legislature must be determined as of the time the original act was passed." *St. Joseph Lead Co. v. Potter Twp.*, 157 A.2d 638, 642 (Pa. 1959) (holding that the because the change was made after a considerable lapse of time, it could not be construed as the original intent).

Here, Act 27 impermissibly attempts to overrule the Pennsylvania Supreme Court's controlling interpretation of the Unseated Land laws. In both *Herder Spring* and *PGC*, the Pennsylvania Supreme Court analyzed statutes dating back to 1804 and countless historical decisions. The General Assembly's attempt to "clarify" those laws, which have been repealed since 1947, by enacting Act 27 on the heels of the *PGC* decision is a clear encroachment on the judiciary. Accordingly, Act 27 cannot be constitutionally applied to this case.

### C. Act 27 Is an Unconstitutional Uncompensated Taking Under the Pennsylvania Constitution

The Takings Clause of the Pennsylvania Constitution further underscores the unconstitutionality of Act 27. That Clause declares that "private property [shall not] be taken or applied to public use, without authority of law and without just compensation *being first made or secured*." Pa. Const. art. I, § 10 (emphasis added). Act 27 is a transparent attempt to seize private property *without* paying just compensation (or *any* compensation), but by retroactively changing the legal rules in effect at the time of the tax sales. *See, e.g., Miller v. City of Beaver Falls*, 82 A.2d 34, 39 (Pa. 1951) (declaring unconstitutional and void Act of June 23, 1931, which allowed cities to tie up a property for three years while deciding whether to use it as a park because no compensation was provided for during that period)

The Pennsylvania Supreme Court and the U.S Supreme Court have both warned of the danger of the legislature finding a shortcut to avoid the

"constitutional way of paying" for a taking. *United Artists Theater Cir., Inc. v. City of Philadelphia, Philadelphia Hist. Comm'n*, 595 A.2d 6, 13–14 (Pa. 1991); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922) (Holmes. J.). Accordingly, "a statute that should take the property of one person and give it to another, or to the public, without making just compensation therefor would be unconstitutional and void." *Krenzelak*, 469 A.2d at 993 (quoting *Willcox v. Penn Mutual Life Ins. Co.,* 55 A.2d 521, 526 (Pa. 1947), internal quotations and alterations omitted). A compensation scheme in the statute is essential for it to pass constitutional muster. *In re State Highway Route No. 185, Schuylkill Cnty. (Glen Alden Coal Co.)*, 14 A.2d 76, 81 (Pa. 1940) (holding that the failure to pay compensation to owner of coal rights beneath highway would render the Act unconstitutional).

Here, Act 27 does not provide any compensation to the severed subsurface owners. Act 27 contains no statutory appropriation, compensation scheme, or remedial mechanism to pay the Trust for the multi-million dollar asset being seized. Instead, it simply takes the property of A and gives it to B.

> We know of no case, in which a legislative act to transfer the property of A. to B. without his consent, has ever been held a constitutional exercise of legislative power in any state in the union. On the contrary, it has been constantly resisted as inconsistent with just principles, by every judicial tribunal in which it has been attempted to be enforced.

*Wilkinson v. Leland*, 27 U.S. 627, 658 (1829) (Story, J.). Because the Pennsylvania Constitution flatly prohibits uncompensated takings, this Court cannot enforce the statute to strip the Trust of its property.

Even if Act 27 *did* provide for just compensation, it would still violate the Takings Clause because it does not require that the property subject to the Act be "applied to public use." *See Middletown Twp. v. Lands of Stone*, 939 A.2d 331, 337 (Pa. 2007) ("[W]ithout a public purpose, there is no authority to take property from private owners."); *Pennsylvania Mut. Life Ins. Co. v. City of Philadelphia*, 88 A. 904, 908 (Pa. 1913) (holding that appropriation of property abutting public highway did not meet the "public use" requirement where it could be later sold to a private entity).

In *Pennsylvania Mutual*, the Pennsylvania Supreme Court held that the statute did not meet the public use requirement because it was effectively "the taking of the property of one citizen without his consent and vesting the title thereto in another." 88 A. at 908. "[I]n order for a taking to be considered a public purpose under both the state and federal constitutions, the public must be the primary and paramount beneficiary of the taking." *Robinson Twp. v. Commonwealth*, 147 A.3d 536, 585 (Pa. 2016) (internal quotation omitted). "The mere conferral of an indirect or incidental benefit to the public is insufficient to constitutionally justify such a taking of private property." *Id.*

Here, Act 27 does not even purport to take the severed subsurface owner's property rights for "public use." It simply transfers the property from Party A to Party B. In this case, IDC contends that the Act vested the Proctor Trust's interest in McCauley Jr. (IDC Br. at 11). Pennsylvania courts uniformly hold that such transfers to another private entity fail to meet the public use requirement. "[B]ecause the exercise of eminent domain power is in derogation of private property rights, any statute that authorizes its use will be strictly construed in favor of landowners." *Robinson Twp.*, 147 A.3d at 586 (enjoining application and enforcement of Act 13 as an unconstitutional taking).

Because Act 27 demands a total, uncompensated divestment of the Trust's vested subsurface rights, it is unconstitutional as applied in this litigation. Consequently, Act 27 cannot be enforced as it constitutes an uncompensated, improper taking of the Trust's property.

**D. Act 27's Statute of Limitations Provision Violates Due Process**

In addition to the fatal infirmities discussed above, Act 27's statute-of-limitations provisions violate both the Pennsylvania and U.S. Constitutions in yet another way. As already noted, the Pennsylvania Supreme Court unanimously determined in *PGC* that the Trust's arguments regarding the legal effect of a tax sale were not subject to any time bar. 335 A.3d at 1124. Act 27, by contrast, states that any action "challenging the legal effect of a tax sale" must be "commenced

within the five-year period … following the date of the tax sale." Act 27 of 2026, sec. 2, § 702-A(A). Of course, because the legal regime to which Act 27 applies ceased to exist in the 1940s and the tax sales at issue occurred in 1908, this newly prescribed limitations period expired over a century ago.

The guarantee of procedural due process does not allow such rug-pulling. Statutes shortening a limitations period cannot apply to actions that are already pending because the timeliness of an action is determined based on when the action was commenced. *See Crisante v. J.H. Beers, Inc.*, 443 A.2d 1150, 1153 (Pa. Super. Ct. 1982) (endorsing "the assumption that a cause of action is governed by the limitation period in effect at the time the complaint is filed"); *Forest v. United States Postal Serv.,* 97 F.3d 137, 140 (6th Cir. 1996) (finding that the application of a new statute of limitations is prospective because it applies to the filing of the complaint, which occurred after the statute was enacted). And even with respect to actions that have not yet been commenced, under both federal and Pennsylvania law, "a reasonable time must be given by [a law shortening the limitation period] before the bar takes effect." *Crisante*, 443 A.2d at 1153 (quoting *Ferki v. Frantz's Transfer Co.*, 31 A.2d 586, 587–88 (Pa. Super. Ct. 1943)); *accord Commonwealth ex rel. Kelley v. Brown*, 193 A. 258, 261 (Pa. 1937); *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 415 (3d Cir. 2010) (explaining that the Supreme Court has found that "a reasonable time [should be] given for the commencement of an

action before the bar takes effect”). Here, Act 27 provides no reasonable time—or any time at all—because the newly imposed limitations period has already expired.

### E. Act 27 Is Procedurally Invalid Under Article III of the Pennsylvania Constitution

Independent of the above substantive constitutional violations, Act 27 is also procedurally invalid under Article III of the Pennsylvania Constitution. Article III was adopted to curb legislative abuses. *City of Philadelphia v. Commonwealth* 838 A.2d 566, 573, 585 (Pa. 2003). Article III’s mandates—single subject, original purpose, and three-days’ consideration— are not “mere advisory guidelines” but “mandatory constitutional directives.” *Id.* at 581. Legislation is void if it “clearly, palpably and plainly” violates them. *Commonwealth, Dep’t of Transp. v. McCafferty*, 758 A.2d 1155, 1160 (Pa. 2000).

#### ***1. The Single-Subject Rule***

Article III, Section 3 bars any bill “containing more than one subject, which shall be clearly expressed in its title.” Pa. Const. art. III, § 3. The rule curbs “logrolling” and “prevents the attachment of riders which could not become law on their own to popular bills that are certain to pass.” *City of Philadelphia*, 838 A.2d at 587 (citing *DeWeese v. Weaver,* 824 A.2d 364, 369 (Pa. Commw. Ct. 2003)); *see also Commonwealth v. Neiman*, 84 A.3d 603, 612 (Pa. 2013) (explaining the rule “proscribes the inclusion of provisions into legislation without allowing for fair notice to the public and to legislators,”). Any provisions added during the

legislative process must "assist in carrying out a bill's main objective" or be "'germane' to the bill's subject as reflected in its title." *City of Philadelphia*, 838 A.2d at 587.

Act 27 embraces two disparate subjects. As introduced, HB 96 prospectively protected owners, living under Pennsylvania's current tax-law regime, with limited ability to receive tax notices by letting them designate a representative. One expands notice to protect current owners; the other retroactively strips past owners of their mineral estates under a now extinct tax regime. These are not merely different but opposite in aim. The original bill modifies existing statutory law and applies prospectively. The Unseated Lands Amendment amends statutory provisions that have been repealed for almost 80 years and seeks to retroactively overturn Pennsylvania Supreme Court decisional authority and legislative enactments that existed at the time of the tax sales.

No permissible unifying topic saves Act 27. "[T]he mere fact that a piece of legislation amends a particular title of the Pennsylvania Consolidated Statutes ... will not automatically fulfill the requirements of Article III, Section 3." *Neiman*, 84 A.3d at 612. The only topic conceivably broad enough to encompass both the original HB 96 and the Unseated Lands Amendment—"the Real Estate Tax Sale Law"—is exactly that kind of impermissible label. The Supreme Court has repeatedly rejected such over-broad labels—"municipalities," *City of Philadelphia*,

838 A.2d at 585; "powers of county commissioners," *Pennsylvania State Ass'n of Jury Commissioners v. Commonwealth*, 64 A.3d 611 (Pa. 2013); "judicial remedies," *Neiman*, 84 A.3d at 612; and "crimes," *Leach v. Commonwealth*, 141 A.3d 426 (Pa. 2016). Such fatal overbreadth is particularly apparent here because the original bill and the Amendment *pertain to two completely different legal regimes*—one is the current regime, and the other has been extinct since the 1940s. A popular, virtually unopposed homeowner bill hijacked as the vehicle for a controversial, retroactive taking of mineral rights is a textbook example of logrolling that Section 3 forbids. The Act "clearly, palpably, and plainly violates" Section 3. *Jury Commissioners*, 64 A.3d at 619.

***2. The Original-Purpose Doctrine***

Article III, Section 1 provides that "no bill shall be so altered or amended, on its passage through either House, as to change its original purpose." Pa. Const. art. III, § 1. The original purpose doctrine prevents the "stealth tactics" of the legislature adding unrelated provisions to a bill. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1221 (Pa. Commw. Ct. 2018). The challenged legislation must pass two inquiries: (1) whether there has been an alteration that changed the original purpose; and (2) whether the title and contents are deceptive in their final form. *Marcavage v. Rendell*, 936 A.2d 188, 192 (Pa. Commw. Ct. 2007), *aff'd*, 951 A.2d 345 (2008) (amendment adding crimes changed original

purpose); *Leach v. Commonwealth*, 118 A.3d 1271, 1288 (Pa. Commw. Ct. 2015), *aff'd*, 141 A.3d 426 (2016) (amendment adding disclosure requirements and a private right of action to challenge firearm restrictions).

The original purpose of HB 96 was to protect vulnerable homeowners by letting them designate a trusted individual to receive tax notices. No reasonable reader of that bill could have anticipated that the final Act would emerge as a statute retroactively conveying severed subsurface estates to tax-sale purchasers. The final purpose is not merely different but antithetical: the introduced bill expanded notice to help owners keep their property; the Act is designed to help purchasers take it. Notably, the Unseated Lands Amendment was added over the weekend as a last-minute vote at the end of the budget session. That epitomizes the "stealth tactics" Section 1 was adopted to prevent.

The Act also fails the deception prong. The enacted title conceals the divestiture of property beneath the phrase "PROVIDING FOR UNSEATED LANDS," giving no notice that the statute retroactively conveys severed mineral estates, nullifies unanimously decided Supreme Court precedent, and attempts to change 150 years of historical statutory and caselaw. Article 3, Section 1 exists to put legislators and the public "on notice, by the title of the measure submitted, so that they might vote on it with circumspection." *Scudder v. Smith*, 200 A. 601, 604 (Pa. 1938). That objective was not fulfilled here.

### *3. The Three Days Consideration Requirement*

Article III, Section 4 commands that "[e]very bill shall be considered on three different days in each House" and that "[a]ll amendments made thereto shall be printed for the use of the members before the final vote is taken." Pa. Const. art. III, § 4. "This [constitutional provision] was intended to prevent the secret insertion of provisions into a bill …." *Washington v. Dep't of Pub. Welfare of Commonwealth*, 188 A.3d 1135, 1146 (Pa. 2018). Non-germane material added late and passed "'without the three days' consideration by each House" violates the provision. *Id.* at 1151.

The House considered HB 96 on three days in spring 2025—April 8, May 6, and May 7—but each reading was of the notification-only bill (P.N. 79 / P.N. 1627), which did not contain any provision relating to Unseated Lands. Article VII-A did not exist until the Senate amended the bill on Saturday, July 11, 2026 (P.N. 3767), and the House considered that version only once, on Sunday, July 12, 2026. Because the Senate's amendments are not germane, the 2025 votes cannot count towards the requirements of Article III, Section 4, and the House's single concurrence vote leaves the Act at least two considerations short—a "clear[], plain[] and palpabl[e]" violation of the provision. *Id.* at 1154.

Pennsylvania courts have coined the term "24 hour legislation" (referred to as "stealth legislation" by commentators) for a bill whose sweeping provisions

were "concealed from the public until 24 hours prior to its passage," observing that "it is exactly such '24 hour legislation' that the Constitutional amendments of 1874 were meant to prohibit." *City of Philadelphia*, 838 A.2d at 575; *see id.* at 573 (holding unconstitutional bill that legislators were "[f]aced with a take-it-or-leave-it situation" and "passed the bill on the same day it was given to them"). Act 27 is "24 hour legislation" in its purest form: the Senate's radical amendment surfaced on July 11, 2026, and both chambers pushed it through the next day, affording neither members nor the public any meaningful chance to study—much less oppose—the retroactive reallocation of subsurface property rights before it became law.

The Act "clearly, palpably, and plainly" violates[10] each of the above constitutional provisions of Article III independently—and overwhelmingly in combination. Therefore, the Court should hold the Act unconstitutional and strike it in its entirety.

---

[10] The issue of the constitutionality of Act 27 was recently raised before the Commonwealth Court in *Pa. Game Commission v. Thomas E. Proctor Heirs Trust*, No. 493 M.D. 2017. During oral argument on August 3, 2026, Judge Stacy Wallace appeared to acknowledge the procedural impropriety of the Legislature in enacting the Unseated Lands Amendment, stating "[t]he other two branches of government worked together in a rapid fashion that really doesn't pass the smell test, and so I want you to know that the third branch isn't hopping on the stinky trail." *See* Stephen Caruso, *Pa. has quietly passed a law undermining a court decision on lucrative mineral rights*, Spotlight PA (Aug. 11, 2026), https://www.spotlightpa.org/news/2026/08/mineral-rights-legal-battle-state-law-natural-gas-drilling-pennsylvania-capitol/.

## II. IDC Has Not Established the Absence of Genuine Disputes of Material Fact

Even if Act 27 were constitutional—which it is not—IDC has not established the absence of genuine disputes of material fact. Aside from relying upon an unconstitutional statute, IDC's motion rests on the contention that the Proctor & Hill subsurface estate was not separately assessed.[11] However, the evidence establishes that the Proctor & Hill estates were paying taxes on their severed subsurface rights. Indeed, correspondence in 1920 from the Trustees of the Proctor Estate to Calvin McCauley Jr. states that "[t]he taxes paid last year by Mr. George R. Hill on account of the Proctor & Hill interests in minerals amounted to $175.40." Pl.'s Response to Def.'s SOF ¶ 9, Ex. 3. This correspondence establishes that taxes were paid on Proctor & Hill subsurface interests in Bradford County and that such interests were treated as separately taxable property. Indeed,

[11] As set forth above, a "separate assessment" of a severed subsurface was *not* required under the unseated land laws applicable at the time of the tax sales. As the Supreme Court explained in *Herder Spring*, the only requirement to avoid a so-called "title wash" was *reporting* of the severance transaction to the County taxing authorities. While a separate assessment can reflect that reporting, the absence of an assessment on the severed subsurface estate does not establish that no reporting occurred. *See Pennsylvania v. Thomas E. Proctor Heirs Tr.*, No. 1:12-CV-1567, 2021 WL 5759030, at *13 (M.D. Pa. Dec. 3, 2021), *aff'd*, No. 22-1587, 2026 WL 2209403 (3d Cir. July 31, 2026) (explaining the absence of a separate assessment "has very limited evidentiary value" because as the Court in *Herder Spring* observed "subsurface estates were not taxed unless they were determined to have distinct and cognizable tax value; if they "had no value," they were not subject to levy.") (citing *Herder Spring*, 143 A.3d at 368).

the township assessment books reflect that Proctor & Hill's interests were assessed on the seated list. Pl.'s Response to Def.'s SOF ¶¶ 6, 9, Exhibits 1 and 2. There were active coal operations on portions of the Proctor & Hill subsurface estate between 1893 and the mid-1920s. Pl.'s Response to Def.'s SOF ¶ 9, Ex. 3. Bradford County records reflect that severed coal rights were taxed on the seated list where there was active development. Pl.'s Response to Def.'s SOF ¶ 9, Ex. 2. Thus, even under the unconstitutional statute, IDC cannot establish that the Proctor & Hill subsurface estate was not subject to a separate assessment.

Moreover, the Proctor Trust's claims rest on factual allegations regarding: (1) the reporting of the severance transaction to the Bradford County Commissioners under the Act of 1806; (2) McCauley Jr.'s status as CPLC's agent at the 1908 tax sale; (3) CPLC's breach of its duty to pay the assessed taxes; and (4) the legal effect of the 1908 tax sale as a redemption rather than a title wash. IDC's motion does not address these factual disputes—it simply asserts that Act 27 makes them irrelevant. But if Act 27 falls, as it must, these disputes remain squarely at the center of this case, and they must be resolved at trial.

## CONCLUSION

For all the foregoing reasons, the Proctor Trust respectfully requests that this Court deny IDC's Motion for Summary Judgment in its entirety.

Dated: August 17, 2026

Respectfully submitted,

/s/ Laura A. Lange
Laura A. Lange (PA 310733)
5519 Sterling Brook
Houston, TX 77041
lange@proctortrust.com

Justin G. Weber (PA 89266)
TROUTMAN PEPPER LOCKE LLP
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181
717.255.1155
717.238.0575 (fax)
Justin.Weber@troutman.com

Attorney for Plaintiffs

**CERTIFICATE OF WORD COUNT**

I certify that the brief, exclusive of tables and signature blocks, has 8,910 words according to the Microsoft Word software that was used to prepare it. Plaintiffs previously filed a motion for leave to exceed the word count limitation under Local Rule 7.8(b)(2) seeking to file a brief that contained less than 9,300 words. To the extent the motion for leave is not granted, Plaintiffs will amend their brief in accordance with the Court's order.

Dated: August 17, 2026 /s/ *Laura A. Lange*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court today via the Court's CM/ECF, and that, pursuant to Local Civil Rule 5.7, participants in the case who are registered ECF users will be served by the ECF system.

Dated: August 17, 2026 <u>/s/ *Laura A. Lange*</u>