**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL DEVELOPMENT COMPANY, LLC,<br><br>Defendant. | Civil Action No. 22-cv-00518<br><br>Hon. Matthew W. Brann<br>Chief United States District Judge |

**REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**HOUSTON HARBAUGH, P.C.**
Robert J. Burnett, Esquire
PA76734
Brendan A. O'Donnell, Esquire
PA309007
401 Liberty Avenue, 22nd Floor
Three Gateway Center
Pittsburgh, PA 15222
Phone: (412) 281-5060
Fax: (412) 281-4499
*Counsel for Defendant International Development Company, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... i
TABLE OF AUTHORITIES .......... ii
REPLY .......... 1
I. Article VII-a Is Presumed Constitutional, and the PHT Does Not Sustain its Heavy Burden to Prove Otherwise. .......... 1
II. Act 27 Does Not Retroactively Divest a Vested Right. .......... 2
III. Act 27 Does Not Violate Separation of Powers .......... 7
IV. Act 27 Does Not Sanction an Unconstitutional Taking. .......... 10
V. The Five-Year Limitations Provision Is Valid and, in Any Event, Severable. .......... 11
VI. Act 27 Satisfies Article III of the Pennsylvania Constitution. .......... 13
a. The Single Subject Rule .......... 14
b. The Original Purpose Doctrine. .......... 15
c. The Three-Day Consideration Requirement. .......... 16
CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Cases**

*A.T. Massey Coal Co., Inc. v. Massanari,* 305 F.3d 226, (4th Cir. 2002) .......................................... 4
*Arizonans for Off. English v. Arizona*, 520 U.S. 43 (1997) .......................................................... 2
*City of Philadelphia v. Com.*, 838 A.2d 566 (Pa. 2003) .............................................................. 14
*Com. v. Doughty*, 126 A.3d 951 (Pa. 2015)............................................................................ 9, 11
*Com. v. Shaffer*, 734 A.2d 840 (Pa. 1999) ................................................................................... 9
*Commonwealth v. Rockwell Mfg. Co.,* 140 A.2d 854 (Pa. 1958) .................................................. 4
*Dale v. Medcalf,* 9 Pa. 108 (Pa. 1848) ............................................................................................ 8
*Eastern Enterprises v. Apfel,* 524 U.S. 498 (1998)......................................................................... 4
*Friends of Pennsylvania Leadership Charter Sch. v. Chester Cnty. Bd. of Assessment Appeals*, 101 A.3d 66 (Pa. 2014) ......................................................................................................... 7
*Gibson v. Com.*, 415 A.2d 80 (Pa. 1980) ........................................................................................ 8
*Grant v. Grant,* 341 A.3d 685 (Pa. 2025) ....................................................................................... 5
*Hartmann v. Time, Inc.*, 166 F.2d 127 (3d Cir. 1947) ................................................................. 13
*Herder Spring Hunting Club v. Keller,* 143 A.3d 358 (Pa. 2016) .................................................. 3
*Hinckle v. Riffert*, 6 Pa. 196 (Pa. 1847) .......................................................................................... 7
*In re Philadelphia Elec. Co.*, 43 A.2d 116 (Pa. 1945) ................................................................... 13
*In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519 (3d Cir. 2017) .................................. 10
*Konidaris v. Portnoff L. Associates*, Ltd., 953 A.2d 1231 (Pa. 2008) ........................................ 2, 4
*Krenzelak v. Krenzelak*, 469 A.2d 987 (Pa. 1983)........................................................................... 3
*Lundeen v. Canadian P. R. Co.*, 532 F.3d 682 (8th Cir. 2008)....................................................... 9
*Menges v. Dentler*, 33 Pa. 495 (1859) .............................................................................................. 8
*N. Liberties v. St. John's Church*, 13 Pa. 104 (Pa. 1850) ....................................................... 10, 11
*Nextel Commun. of Mid-A., Inc. v. Cmmw., Dept. of Revenue*, 171 A.3d 682 (Pa. 2017)............ 12
*Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Tr.*, 335 A.3d 1108 (Pa. 2025)........ 3, 7
*Pennsylvanians Against Gambling Expansion Fund, Inc. v. Com.*, 877 A.2d 383 (Pa. 2005) ................................................................................................................................ passim
*St. Joseph Lead Co. v. Potter Twp.*, 157 A.2d 638 (Pa. 1959) ........................................................ 9
*Terry v. Anderson*, 95 U.S. 628 (1877)...................................................................................... 10, 11
*Trade Waste Mgt. Ass'n, Inc. v. Hughey*, 780 F.2d 221 (3d Cir. 1985) ......................................... 12
*United States v. Carlton*, 512 U.S. 26 (1994) ............................................................................. 4, 5
*Unity Real Est. Co. v. Hudson,* 178 F.3d 649 (3d. Cir. 1999) ........................................................ 4
*Washington v. Dept. of Pub. Welfare of Cmmw.*, 188 A.3d 1135 (Pa. 2018)........................ 14, 17

**Statutes**

1 Pa.C.S. § 1925.............................................................................................................................. 12
72 P.S. § 5860.702-A...................................................................................................................... 13

**Other Authorities**

Pa.Const. Art. III, § 4. ..................................................................................................................... 16

# REPLY

## I. Article VII-a Is Presumed Constitutional, and the PHT Does Not Sustain its Heavy Burden to Prove Otherwise.

The Thomas E. Proctor Heirs Trust (the "PHT") responds to International Development Company, LLC's ("IDC") Motion for Summary Judgment by challenging the constitutionality of Act 27 of 2026 ("Act 27"), which includes the statutory provisions ("Article VII-a") that are the foundations of IDC's application for judgment as a matter of law. The PHT has not carried its heavy burden.

Legislative enactments carry "a strong presumption" of constitutionality, and that presumption "includes the manner by which legislation is enacted." *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Com.*, 877 A.2d 383, 393 (Pa. 2005). A statute "will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution…[a]ll doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster," and the challenger bears "a very heavy burden of persuasion." *Id*. This deferential standard applies with equal force to the PHT's separation-of-powers, takings, due-process, and Article III arguments. In each case, the PHT falls short of that burden. Relevant here, federal courts exercise restraint when considering the constitutionality of a state statute in the absence of controlling authority from state courts about the

meaning and effect of the statute. *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 75 (1997).

## II. Act 27 Does Not Retroactively Divest a Vested Right.

While the PHT contends that Act 27 impairs the PHT's claimed "vested rights" in violation of Article I, Sections 9 and 11 of the Pennsylvania Constitution, the PHT does not present any "vested rights" that could have been impacted. A protected vested right "must be something more than a mere expectation, based upon an anticipated continuance of existing law. It must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Konidaris v. Portnoff L. Associates*, Ltd., 953 A.2d 1231, 1242 (Pa. 2008).

According to the PHT, "under the law in effect at the time of the tax sales, those sales did *not* divest the Trust's predecessors of their subsurface rights if *either* (1) the transaction severing ownership of the surface and subsurface estates had been reported to the county taxing authorities before 1908, *or* (2) the purchaser at the tax sales was an agent of the defaulting surface owner, CPLC." [PHT Brief in Opposition to Summary Judgment, ECF Doc. 38 at p. 12]. This is a contingent argument intended to avoid the reality that ". . . the failure to report a severance of unseated land could result not only in a four-fold statutory penalty, but also had the practical effect of having the property assessed and taxed as a whole. . .". *Herder*

*Spring Hunting Club v. Keller,* 143 A.3d 358, 365 (Pa. 2016). Since the PHT identifies its claimed right as being contingent, it cannot be a "vested right" because "[a] 'vested right' is one that 'so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.'" *In re K.A.P.,* 916 A.2d 1152, 1160 (Pa. Super. Ct. 2007).

The Pennsylvania Supreme Court's decision in *Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Tr.*, 335 A.3d 1108 (Pa. 2025) ("*PGC*") does not create a "vested right" either. *PGC* addressed one tract, the Josiah Haines warrant, based on specific facts related to that tract. It did not establish a universal, vested right in the PHT as to all subsurface parcels that the PHT claims.

*Even if* the PHT could muster evidence of a "vested right", it would not matter because retrospective laws are valid where they "impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations." *Krenzelak v. Krenzelak*, 469 A.2d 987, 991 (Pa. 1983). Article VII-a, in Act 27, fits squarely within that description by confirming the legal effect of completed tax sales. In this domain, the Pennsylvania Supreme Court has expressly recognized the General Assembly's broad power to act, stating that "[t]he taxing power of the Legislature is very broad and includes power to enact taxes which are retroactive in effect as well as the power to retroactively increase

taxes." *Konidaris*, 953 A.2d at 1243; *Commonwealth v. Rockwell Mfg. Co.,* 140 A.2d 854, 856 (Pa. 1958).

The federal due process standard that the PHT invokes does not compel a different result. The PHT relies on *Eastern Enterprises v. Apfel,* 524 U.S. 498 (1998) to advance this argument. *Apfel* involved a statute that imposed retroactive monetary liability, which is not present here, and there is no controlling majority decision in *Apfel* on the constitutional issues. *See, Unity Real Est. Co. v. Hudson,* 178 F.3d 649, 658 (3d. Cir. 1999); *A.T. Massey Coal Co., Inc. v. Massanari,* 305 F.3d 226, 235, n.12 (4th Cir. 2002).

The Supreme Court's approach in *United States v. Carlton*, 512 U.S. 26 (1994) is the more appropriate test. The Court "repeatedly has upheld retroactive tax legislation against a due process challenge," and has stated that the standard applied to tax legislation with retroactive effect "does not differ from the prohibition against arbitrary and irrational legislation" that governs retroactive economic enactments generally. *Id.* at 30. The governing standard is deferential: "[p]rovided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches," and the burden that retroactivity carries "is met simply by showing that the retroactive

application of the legislation is itself justified by a rational legislative purpose." *Id.* at 31.

Act 27 comfortably meets that standard. It serves the plainly legitimate purposes of stabilizing title to formerly unseated lands, quieting century-old disputes over title where the passage of time has eroded the existence of records and witnesses, and facilitating development of subsurface resources.

As a final point in this vein, the PHT's failure to establish "vested rights" moots its factual argument. The PHT seeks to quiet title to the minerals, coal, oil, gas, or petroleum (the "Subsurface Estate" under eight discrete tracts of land (the "Premises") in Bradford County, Pennsylvania. [Complaint, EFC Doc. 1 at ¶¶ 1; 11; 71-79]. "The plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title." *Grant v. Grant,* 341 A.3d 685, 690 n.4 (Pa. 2025).

The PHT admits that the surface estate of the Premises was subject to unseated lands tax sales in June 1908. [PHT's Response to Statement of Material Facts, ECF Doc. 37 at ¶ 6]. The unseated land taxation system ". . . treated unseated land 'entirely in reference to the original warrants when not otherwise directed by the owners.'" *Herder Spring Hunting Club v. Keller,* 143 A.3d 358, 372 (Pa. 2016) (quoting *Heft v. Gephart,* 65 Pa. 510 (Pa. 1879)).

Acknowledging that the 1907 Bradford County unseated land books do not contain a separate assessment of the Subsurface Estate of the Premises, [PHT's Response to IDC Statement of Material Facts, ECF Doc. 37 at ¶ 10] the PHT offers Barclay Township seated books to argue that the Subsurface Estate was separately reported. [PHT's Response to IDC Statement of Material Facts, ECF Doc. 37 at ¶ 6; Exs. 1-2]. But, this creates no issue of fact because the identified land book entries are only in the name of "Hill, J.A. Est." and identify "44 acres" and "4 houses," with no discernible connection to the Subsurface Estate or the Premises. [PHT's Response to IDC Statement of Material Facts at Exhibit 1; ECF Doc. 37-1, pp. 14-15]. The testimony offered by the PHT is similarly vague and makes no connection to the Subsurface Estate or the Premises. [PHT's Response to IDC Statement of Material Facts at Exhibit 2; ECF Doc. 37-2, p. 8; Tr. p. 25:5-10].

The PHT offers correspondence from August and September 1920 between the Thomas Proctor Estate and McCauley, Jr. These letters post-date the June 1908 tax sales of the Premises by over a decade, are between private citizens, contain no interaction with any Bradford County official, and do not identify that any part of the Subsurface Estate was separately reported. [PHT's Response to IDC Statement of Material Facts, ECF Doc. 37-3]. There is no "vested right" property wise, and there is no question of fact related to it.

## III. Act 27 Does Not Violate Separation of Powers.

The PHT contends that Act 27 unconstitutionally "overrules" the Pennsylvania Supreme Court. The PHT is mistaken. This argument wholly misconstrues the separation of powers inquiry. There is a difference between reopening a final judgment and changing the law that governs a pending case.

Under Pennsylvania law, the separation-of-powers doctrine bars the legislature from disturbing what the judiciary has finally decided, not from changing the law that governs matters still pending. *Friends of Pennsylvania Leadership Charter Sch. v. Chester Cnty. Bd. of Assessment Appeals*, 101 A.3d 66, 73-74 (Pa. 2014); *Hinckle v. Riffert*, 6 Pa. 196, 198 (Pa. 1847) ("[I]t is entirely within legislative competency to make a law operate on pending cases in court, if they expressly, or by irresistible implication, so declare their will."). The General Assembly "possesses the power to enact substantive law"; it simply "may not affect judicial judgments and decrees already entered by subsequent legislative changes to the governing law." *Friends of Pennsylvania Leadership Charter Sch.*, 101 A.3d at 74.

Act 27 does not require the re-opening of a final judgment in this case or any other. There has been no final judgment in this case regarding the ownership of the Subsurface Estate. *PGC* is a separate action from this case. And, in *PGC*, there was only a judgment in that case on one tract, the "Josiah Haines" warrant, which is not

at-issue here. Nothing within Article VII-a directs or requires that statute's application to cases which have been finally decided.

The PHT's reliance on *Dale v. Medcalf,* 9 Pa. 108 (Pa. 1848), *Menges v. Dentler*, 33 Pa. 495 (1859), *Gibson v. Com.*, 415 A.2d 80 (Pa. 1980) is misplaced because those cases are distinguishable. *Dale* involved a void sheriff's sale that was "made contrary to legislative enactment" and "declared by this court utterly void." *Dale,* 9 Pa. at 111. The Pennsylvania Supreme Court concluded that a subsequent legislative enactment could not retroactively validate the sale. *Id.* That has no bearing on either the facts or law in this case.

*Menges* determined whether newly enacted legislation could be applied to a case after a final decision regarding title was made. *Menges,* at 495 ("The title to this land was once, in due course of law, declared to be in the heirs of Solomon Menges, against the title claimed by George Oyster under a sheriff's deed, purporting to convey it as the property of their father. Afterwards, an Act of Assembly was passed…"). Here, title to the Subsurface Estate has obviously not been decided to be the PHT's property.

For its part, *Gibson* rested on the fact that the newly enacted legislation sought to "extinguish a right of action which has already accrued to a claimant." *Gibson,* 415 A.2d at 83. Act 27 does no such thing. The PHT is free to pursue its alleged ownership claim in the Subsurface Estate; that is not foreclosed by Act 27. Instead,

Act 27 merely confirms the type of evidence required to establish the claim that the PHT advances.

The PHT's discussion of "clarifying legislation" is also of no consequence. *Com. v. Shaffer*, 734 A.2d 840, 843-44 (Pa. 1999) and *St. Joseph Lead Co. v. Potter Twp.*, 157 A.2d 638, 642 (Pa. 1959), discussed "clarifying amendments" in the context of amendments that failed to clearly indicate their retroactive effect and amendments which sought to retroactively create authority to act. Neither of those circumstances exists here. Where a decision rests on statutory interpretation, "the legislature can prospectively amend the statute if it disagrees with a court's interpretation," and courts have squarely rejected the notion that labeling an amendment as a "clarification" changes the analysis. *Com. v. Doughty*, 126 A.3d 951, 955 (Pa. 2015); *Lundeen v. Canadian P. R. Co.*, 532 F.3d 682, 689 (8th Cir. 2008) ("We reject [the] argument about Congress's reference to the amendment as a "[c]larification" of existing law rather than a substantive change to existing law somehow alters our analysis. We are obliged to apply the amendment to pending cases regardless of the label Congress attached to it.").

What matters is not the label attached to Act 27 but whether the statute changes the broadly governing law versus commanding a result in a particular case. Because Act 27 addresses the applicable law and does not legislate a result in a

specific case, Act 27 is a permissible exercise of legislative power, not an intrusion on the judicial function.

## IV. Act 27 Does Not Sanction an Unconstitutional Taking.

Article VII-a in Act 27 has not deprived or stripped the PHT of any right, whether a property interest or a cause of action. The PHT's "takings" argument presupposes the very thing in dispute: that the PHT owns the Subsurface Estate. But, the PHT's own papers describe its ownership claim as being contingent. [PHT's Brief in Opposition to Summary Judgment, ECF Doc. 38 at p. 12].

Simply put, nothing has been "taken" here. Because a "taking" requires a property interest the government has appropriated, a scenario where a statute merely confirms that the claimant never held a valid interest in the first place dictates that there was nothing to "take". *See In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017) ("Without a legally cognizable property interest, [the plaintiff] has no cognizable takings claim."); *N. Liberties v. St. John's Church*, 13 Pa. 104, 106 (Pa. 1850) (confirming the legislature's ability to prescribe the kind of evidence necessary to sustain a right under pre-existing law); *Terry v. Anderson*, 95 U.S. 628, 633, (1877) ("[A]s to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain."). Because nothing has been "taken", the PHT's public-use argument is not implicated.

The PHT's inability to establish its claimed title to the Subsurface Estate under the evidence required by Act 27 does not mean the General Assembly has effectuated an uncompensated taking. Act 27 does not transfer a proven property interest from the PHT to IDC (or anyone else), nor does the statute extinguish either a judgment or an adjudicated interest in the Subsurface Estate. The statute instead prescribes the evidence necessary to establish whether a claimed property interest survived a tax sale. The Constitution does not entitle a claimant to any particular evidentiary regime or forfeiture procedure, so long as the statutory framework is not arbitrary or unfair. *See N. Liberties*, 13 Pa. at 106. Act 27 rationally requires decades-old title claims to be proven through recognized county records, rather than inferences or speculation from incomplete historical documents due to the passage of time. This plainly was a requirement the General Assembly was well within its authority to enact.

## V. The Five-Year Limitations Provision Is Valid and, in Any Event, Severable.

The PHT's reliance on *PGC* to advance the limitations argument is, again, misplaced. That the Pennsylvania Supreme Court held in *PGC* that the PHT's arguments were not time barred does not restrict the General Assembly from altering the statute of limitations going forward. *See Doughty*, 126 A.3d at 955 ("[T]he legislature can prospectively amend the statute if it disagrees with a court's interpretation."); *Terry v. Anderson*, 95 U.S. at 633 ("It is difficult to see why, if the legislature may prescribe a [statute of] limitation where none existed before, it may

not change one which has already been established"). The General Assembly was within its authority to restate the limitations period set forth in the Act of April 3, 1804, P.L. 517, No. 124.

Even if Article VII-a's limitations provision does not apply to this action because the case was already pending when Act 27 was enacted, that would not invalidate Act 27 as a whole or preclude application of its remaining provisions. A federal court asked to invalidate a legislative enactment "should act cautiously," because "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people," and "a court should refrain from invalidating more of the statute than is necessary." *Trade Waste Mgt. Ass'n, Inc. v. Hughey*, 780 F.2d 221, 232 (3d Cir. 1985).

Under 1 Pa.C.S. § 1925, statutory provisions are severable, and one invalid provision does not defeat the balance of the statute unless the remaining provisions are "so essentially and inseparably connected with, and so depend upon, the void provision" that the General Assembly would not have enacted the remaining provisions standing alone, or unless the remainder cannot be carried out in accordance with the legislative intent. *See also Nextel Commun. of Mid-A., Inc. v. Cmmw., Dept. of Revenue*, 171 A.3d 682, 703 (Pa. 2017) ("A severability analysis [must] be undertaken whenever a statute has been invalidated as the result of an as-applied constitutional challenge."). "The touchstone for determining legislative

intent in this regard is to answer the question of whether, after severing the unconstitutional provisions of a statute, the legislature would have preferred what is left of its statute to no statute at all." *Id*. (internal citations and brackets omitted).

Act 27's substantive rule regarding title, 72 P.S. § 5860.702-A(a), stands independently of any time bar, and if the Court were to hold the five-year limitations provision unconstitutional as-applied, the substantive provisions of Act 27 would remain fully "capable of being executed in accordance with legislative intent." *Pennsylvanians Against Gambling Expansion Fund, Inc.*, 877 A.2d at 403. With the original legislation from the early 1800s having limitations periods, no aspect of the analysis under 72 P.S. § 5860.702-A(a) changes in the absence of the Act 27 limitations period, leaving no reason to believe the General Assembly would not have wanted the remaining provisions applied. This is further supported by the fact that a statute of limitations is procedural, in contrast to the substantive provisions they apply to. *See Hartmann v. Time, Inc.*, 166 F.2d 127, 139-40, n. 16 (3d Cir. 1947) ("A statute of limitations provides a procedural limitation but does not deal with substantive rights.") (quoting *In re Philadelphia Elec. Co.*, 43 A.2d 116, 119 (Pa. 1945)).

## VI. Act 27 Satisfies Article III of the Pennsylvania Constitution.

The PHT's remaining challenges are procedural. It contends that the manner in which Act 27 was enacted violated Article III of the Pennsylvania Constitution's

single-subject, original-purpose, and three-day-consideration requirements. Article III challenges are governed by the same strong presumption of constitutionality, which "extends to the manner in which [legislation] was passed." *Washington v. Dept. of Pub. Welfare of Cmmw.*, 188 A.3d 1135, 1149 (Pa. 2018). A statute is void only if it "clearly, palpably, and plainly violates the Constitution." *Id*.

**a. The Single Subject Rule**

Article III, Section 3 of the Pennsylvania Constitution bars a bill from embracing more than one subject. This requirement is satisfied where the provisions "assist in carrying out a bill's main objective or are otherwise germane to the bill's subject as reflected in its title," and the inquiry is "whether there is a single unifying subject to which all of the provisions of the act are germane." *Pennsylvanians Against Gambling Expansion Fund, Inc*., 877 A.2d at 395–96.

Act 27 amended multiple provisions within the Real Estate Tax Sale Law, and both the homeowner-notice provisions and the unseated lands provisions concern the same unifying subject: the procedures governing tax sales in Pennsylvania and the property rights arising from them. That is a genuine, cohesive subject—far narrower than the "municipalities" label rejected in *City of Philadelphia*—just as "the regulation of gaming" was found to be a valid single subject. *City of Philadelphia v. Com.*, 838 A.2d 566, 589 (Pa. 2003); *Pennsylvanians Against Gambling Expansion Fund*, Inc., 877 A.2d at 395-96. The PHT's contention that the

two sets of provisions are "opposite in aim" confuses differing operative effects with differing subjects.

**b. The Original Purpose Doctrine.**

Article III, Section 1 of the Pennsylvania Constitution forbids amending a bill, on its passage through either house, in a way that changes its original purpose. A two-part test is applied: comparing the original purpose of the legislation to the final purpose and determining where an alteration or amendment has been made as to change its original purpose. *Pennsylvanians Against Gambling Expansion Fund, Inc.* 877 A.2d at 408–09. Viewed in the reasonably broad terms that Pennsylvania law requires, Act 27's purpose remained consistent from introduction through enactment. *Id*. It addressed the procedures governing tax sales of real property and the rights of owners in those sales. The Pennsylvania Supreme Court has sustained far more dramatic legislative transformations, upholding a bill that grew from a narrow background check and fingerprinting measure into a comprehensive gaming act, because the reviewing court is "loathe to substitute [its] judgment for that of the legislative branch" and the original purpose is "viewed in reasonably broad terms" to ensure "the General Assembly is given full opportunity to amend and even expand a bill." *Id.*

A "deception" is implicated in an Article III, Section 3 analysis, not Section 1. Regardless, there is only a violation of Article III, Section 3 where "the legislators

and the public were actually deceived" or "no reasonable person would have been on notice." *Id.* at 406. Act 27's title's reference to unseated lands—a well-known term of art in Pennsylvania property law—placed any reasonable reader on notice of the subject, and the PHT identifies no legislator or individual who was deceived.

**c. The Three-Day Consideration Requirement.**

Article III, Section 4 of the Pennsylvania Constitution requires that every bill be considered on three different days in each house. Pa.Const. Art. III, § 4. A Section 4 challenge premised on a late amendment is derivative. The challenger "must necessarily establish that Article III, Section 1 or 3 had been violated," because "[a]n amended bill need not be referred to committee and considered on those separate days if the amendments are germane to, and do not wholly change, the general subject of the bill." *Pennsylvanians Against Gambling Expansion Fund, Inc.* 877 A.2d at 410. Because Article VII-A is germane to the remainder of Act 27, the House's three considerations of House Bill 96, eventually Act 27, and the Senate's three considerations—count toward the requirements. Having failed to establish any Section 1 or Section 3 violation, the PHT cannot sustain its derivative Section 4 claim, and Section 4 is satisfied.

In sum, the PHT cannot show that Act 27 or Article VII-a, specifically, "clearly, palpably, and plainly" violate any provision of Article III of the

Pennsylvania Constitution. *Washington*, 188 A.3d at 1149. Its procedural challenge fails, and Act 27 must be given effect.

## CONCLUSION

Article VII-a in Act 27 resolves this dispute as a matter of law, and the PHT's constitutional attacks cannot overcome the statute's strong presumption of validity. IDC is entitled to judgment as a matter of law.

Respectfully submitted,

Date: August 31, 2026

By: *s/ Brendan A. O'Donnell*________
Robert J. Burnett, Esquire
PA76734
Brendan A. O'Donnell, Esquire
PA309007
HOUSTON HARBAUGH, P.C.
401 Liberty Avenue, 22nd Floor
Three Gateway Center
Pittsburgh, PA 15222
Phone: (412) 281-5060
Fax: (412) 281-4499
*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)

I hereby certify that the Brief in Reply to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment contains 4,690 words and complies with Middle District Local Rule 7.8(b)(2), by not exceeding 5,000 words.

Date: August 31, 2026

By: *s/ Brendan A. O'Donnell*

Robert J. Burnett, Esquire
PA76734
Brendan A. O'Donnell, Esquire
PA309007
HOUSTON HARBAUGH, P.C.
401 Liberty Avenue, 22nd Floor
Three Gateway Center
Pittsburgh, PA 15222
Phone: (412) 281-5060
Fax: (412) 281-4499
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, Brendan A. O'Donnell, hereby certify that a true and correct copy of the foregoing Reply to Plaintiffs' Brief in Opposition to Motion for Summary Judgment was served upon the following counsel of record on this 31st day of August 2026 via the Court's Electronic Case Filing (ECF) system which will forward notification of said filing to all counsel of record:

Laura A. Lange, Esquire
5519 Sterling Brook
Houston, TX 77041
lange@proctortrust.com

Justin G. Weber, Esquire
Troutman Pepper
Suite 200, 100 Market Street
PO Box 1181
Harrisburg, PA 17108
Justin.weber@troutman.com

*Counsel for Plaintiffs*

*s/ Brendan A. O'Donnell*_____
Brendan A. O'Donnell, Esquire